IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 14, 2007 Session

**STATE OF TENNESSEE v. ADRIAN K. NELSON**

**Appeal from the Circuit Court for Warren County**
**No. F-9266      Larry F. Stanley, Jr., Judge**

---

**No. M2006-00653-CCA-R3-CD - Filed April 24, 2008**

---

Appellant, Adrian K. Nelson, was indicted by a Warren County Grand Jury for possession of .5 grams or more of cocaine with the intent to sell, evading arrest, felony reckless endangerment, leaving the scene of an accident, resisting arrest and driving on a suspended license, second offense. After a jury trial, Appellant was convicted of all of the offenses and sentenced to an effective sentence of twenty-two years. The trial court denied a motion for new trial. Appellant seeks review of the following issues on appeal: (1) whether the trial court erred in denying the motion for new trial; (2) whether the trial court properly denied the motion to suppress; (3) whether the evidence was sufficient to support Appellant's convictions for possession of cocaine with intent to sell, evading arrest and reckless endangerment;[1] (4) whether the trial court erred by failing to instruct the jury with the lesser included offense of misdemeanor reckless endangerment; (5) whether the trial court erred in failing to instruct the jury on the inference of "casual exchange" as set forth in Tennessee Code Annotated section 39-17-419; and (6) whether the sentence is excessive. Because we determine that the trial court erred by failing to instruct the jury with the lesser included offense of misdemeanor reckless endangerment, we reverse Appellant's conviction for felony reckless endangerment and remand the matter to the trial court for further proceedings. In all other respects, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed in Part, Reversed in Part and Remanded in Part.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, and ALAN E. GLENN, JJ., joined.

Lindsay C. Barrett, Dickson, Tennessee, for the appellant, Adrian K. Nelson.

---

[1]Appellant does not contest the sufficiency of the evidence with regard to his convictions for leaving the scene of an accident, resisting arrest or driving with a suspended license.

Robert E. Cooper, Jr., Attorney General & Reporter; Brent C. Cherry, Assistant Attorney General; Dale Potter, District Attorney General, and Larry Bryant, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

In December of 2002, a Warren County Grand Jury indicted Appellant for violating Tennessee law by possessing .5 grams or more of cocaine with the intent to sell, evading arrest, resisting arrest, reckless endangerment, leaving the scene of an accident and driving on a suspended license, second offense. The charges arose after a police officer with the McMinnville Police Department initiated a traffic stop of Appellant on October 15, 2002.

Prior to trial, Appellant filed a motion to suppress. In the motion, Appellant argued that the search of Appellant and seizure of a "blue container containing cocaine base" were "without a warrant and in the absence of exigent circumstances." Further, Appellant argued that there was no probable cause because the police officer had illegally stopped Appellant's car.

Immediately preceding trial, the trial court held a hearing on the motion to suppress. During that hearing, Officer Chris DeLong of the McMinnville Police Department testified that he was patrolling the area around Bobby Branch Road and Cascade Road after receiving information about suspected drug activity in that area. While parked approximately fifty feet away from Mark's Market, Officer DeLong observed a red vehicle pull into the parking lot and park next to a gold vehicle. Officer DeLong saw a man get out of the gold vehicle and get into the red vehicle where it "appeared to [him] that an exchange of some kind took place." Officer DeLong was unable to see what, if anything, was exchanged but believed it to be a "possible drug transaction."

When the red vehicle left the parking lot, Officer DeLong followed the vehicle. He noticed that the license plate was not securely attached to the vehicle. According to Officer DeLong, the license plate was "hanging a little bit uneven" and was "slightly tilted to one side." At that time, Officer DeLong activated the blue lights on his patrol car. Rather than stopping, the red vehicle increased speed. Officer DeLong continued to pursue the red vehicle until it struck another vehicle. Officer DeLong then pinned the red vehicle between his patrol car and the other vehicle in an intersection. Appellant, the driver of the red vehicle, fled on foot. Officer DeLong pursued Appellant on foot. After chasing Appellant for some time, Officer DeLong caught up to him. A scuffle ensued while Officer DeLong was trying to arrest Appellant. Officer DeLong recovered a blue container "approximate to the scene of the scuffle" that contained several white rocks of a substance appearing to be cocaine. Appellant also had a check for an unspecified amount and $114 in cash on his person.

-2-

Because of Appellant's failure to stop when Officer DeLong activated his blue lights, the trial court determined that the seizure of the blue container by Officer DeLong was proper, regardless of whether the officer had a reasonable suspicion to initiate the stop based on the license plate. The trial court noted that the "exchange" witnessed by Officer DeLong was not a reason to initiate a stop of Appellant.[2]

At the conclusion of the hearing, the trial court denied the motion to suppress, and the trial began. At trial, Officer DeLong's testimony was mostly repetitive of his testimony at the hearing on the motion to suppress with the addition of information that the rock-like substance was tested and was .5 grams of cocaine.

Appellant took the stand at trial. Appellant testified that he drove his girlfriend's car to Mark's Market to buy a cigar so that he could smoke crack. Appellant saw an acquaintance, Mr. Barnhill, in the parking lot of the market. Appellant claimed that Mr. Barnhill did not get into his vehicle that day. Appellant saw Officer DeLong sitting in his patrol car at the nearby intersection and was "kind of paranoid" because he was "high." Appellant testified that he "had been up all night" using drugs. When Officer DeLong activated his blue lights, Appellant's "intention was to pull over." However, when Appellant "got to the stop-sign [sic]," Officer DeLong "pushed [him] into the truck." Appellant admitted that he ran from the vehicle with his drugs in a blue container that were for "personal use." Appellant ran until he was "out of gas" and "tired." Appellant stated that he "never resisted" arrest, but that Officer DeLong "slammed [him] to the ground." Appellant admitted that he had been using drugs since he was seventeen. He denied ever selling drugs even though he admitted that he had several prior convictions that involved the sale of drugs. At the conclusion of the proof, the jury found Appellant guilty of the offenses as charged in the indictment.

*Sentencing Hearing*

At the sentencing hearing, the trial court heard testimony from Donna Dunlap, the person who prepared the presentence report. She listed Appellant's prior convictions and noted that Appellant had been charged with more than one instance of violating probation. Appellant expressed remorse for his actions and stated that his addiction to drugs caused his criminal behavior. Appellant stated to the trial court that he wanted to change his circumstances. The trial court applied three enhancement factors and no mitigating factors in determining Appellant's sentence. The trial court sentenced Appellant as a Range II multiple offender to eighteen years for possession of cocaine, four

---

[2]Later, during the trial, the trial court clarified its ruling, stating:

[T]he stop that was going to be initiated by the patrolman appeared to be justified on his part for violation of the law requiring the licence [sic] plate to be securely fastened and relatively horizontal.

The other issue regarding whether or not he had a reason to investigate or pull this gentleman over because of suspected drug activity, I just don't find there was enough support for that.

So I do for the one; I don't for the other.

years for evading arrest, four years for felony reckless endangerment, thirty days for leaving the scene of the accident, six months for resisting arrest, and eleven months and twenty-nine days for driving on a suspended license. The trial court ordered the two four-year sentences to run concurrently with each other, but consecutively to the eighteen-year sentence. The trial court ordered the remaining sentences to run concurrently to each other, for a total effective sentence of twenty-two years.

Appellant filed a timely notice of appeal after the trial court denied his motion for new trial and amended motion for new trial. On appeal, Appellant challenges the summary denial of his motion for new trial; the sufficiency of the evidence for his convictions for possession of cocaine, evading arrest, and reckless endangerment; the trial court's failure to instruct the jury with misdemeanor reckless endangerment and casual exchange; and his sentence, as excessive.

*Analysis*

*Denial of Motion to Suppress*

Appellant first argues on appeal that the trial court erred in denying his motion to suppress the "blue container of cocaine from being introduced by the State into evidence." Specifically, Appellant "submits that the registration tag violation that Officer DeLong relied upon in initiating the stop was a pretext." Appellant argues that because Officer DeLong did not have a reasonable suspicion to support an investigatory stop, the trial court erred in denying the motion to suppress. The State disagrees, arguing that Officer DeLong had reasonable suspicion to initiate a traffic stop of Appellant based on "an observed traffic violation" and because he suspected that Appellant had been involved in "the sale of illegal drugs" at the market. Further, the State contends that Appellant's failure to stop when Officer DeLong activated his emergency lights "constituted a violation of Tennessee law and justified Officer DeLong's pursuit" and the subsequent seizure of the blue container incident to arrest.

This Court will uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise. *State v. Hayes*, 188 S.W.3d 505, 510 (Tenn. 2006) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). On appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. Our review of a trial court's application of law to the facts is de novo, with no presumption of correctness. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001) (citing *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)). When the trial court's findings of fact are based *entirely* on evidence that does not involve issues of witness credibility, however, appellate courts are as capable as trial courts of reviewing the evidence and drawing conclusions and the trial court's findings of fact are subject to de novo review. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000).

Further, we note that "in evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial." *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures by government agents.[3]  *See* U.S. Const. amend. IV; Tenn. Const. art. I, § 7.  "These constitutional provisions are designed to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" *Keith*, 978 S.W.2d at 865 (quoting *Camara v. Municipal Court*, 387 U.S. 523, 528 (1967)).  The Tennessee Supreme Court has noted previously that "[a]rticle I, [section] 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment [of the United States Constitution]," and that federal cases applying the Fourth Amendment should be regarded as "particularly persuasive." *Sneed v. State*, 423 S.W.2d 857, 860 (Tenn. 1968).

Under both constitutions, "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *Yeargan*, 958 S.W.2d at 629 (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971)); *see also State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003).  A police officer's stop of an automobile constitutes a seizure under both the United States and Tennessee Constitutions.  *See Whren v. United States*, 517 U.S. 806, 809-10 (1996); *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 450 (1990); *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Vineyard*, 958 S.W.2d 730, 734 (Tenn. 1997).  Further, our supreme court has stated that "[w]hen an officer turns on his blue lights, he or she has clearly initiated a stop . . . [and the vehicle's driver is] 'seized' within the meaning of the *Terry* [*v. Ohio*, 342 U.S. 1 (1968)] decision." *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993).  Therefore, to be considered "reasonable," a warrantless stop of a driver must fall under an exception to the warrant requirement.

One of these narrow exceptions occurs when a law enforcement officer stops an automobile based on probable cause or reasonable suspicion that a traffic violation has occurred.  *Whren*, 517 U.S. at 810; *State v. Randolph*, 74 S.W.3d 330, 334 (Tenn. 2002); *Vineyard*, 958 S.W.2d at 734.  If the officer has probable cause to believe that a traffic violation has occurred, any seizure will be upheld even if the stop is a pretext for the officer's subjective motivations in making the stop.  *See Whren*, 517 U.S. at 813-15; *Vineyard*, 958 S.W.2d at 734-35.  Another such exception occurs when a law enforcement officer initiates an investigatory stop based upon specific and articulable facts that the defendant has either committed a criminal offense or is about to commit a criminal offense. *Terry*, 392 U.S. at 20-21; *Binette*, 33 S.W.3d at 218. This narrow exception has been extended to the investigatory stop of vehicles.  *See United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975); *State*

---

[3]The Fourth Amendment is applicable to the states pursuant to the Due Process Clause of the Fourteenth Amendment. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

*v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). In evaluating whether the law enforcement officer had reasonable suspicion to justify an investigatory stop, this Court must consider the totality of the circumstances, which includes the personal observations and rational inferences and deductions of the trained law enforcement officer making the stop. *See Terry*, 392 U.S. at 21; *Binette*, 33 S.W.3d at 218; *Watkins*, 827 S.W.2d at 294. Objective standards apply, rather than the subjective beliefs of the officer making the stop. *State v. Norword*, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996). "'The officer, of course, must be able to articulate something more than an inchoate and unparticularized suspicion or hunch.'" *Yeargan*, 958 S.W.2d at 632 (quoting *United States v. Sokolow*, 490 U.S. 1, 7-8 (1989)). This includes, but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. *Watkins*, 827 S.W.2d at 294 (citing *United States v. Cortez*, 449 U.S. 411, 418 (1981)). A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him. *Terry*, 392 U.S. at 21.

In the case herein, it is clear that Appellant was "seized" within the meaning of the state and federal Constitutions. Officer DeLong testified that he turned on his lights in order to stop Appellant's vehicle. Thus, in order for the stop to be constitutionally valid, at the time that Officer DeLong turned on his vehicle's blue lights, he must have at least had reasonable suspicion, supported by articulable facts, that Appellant had committed, or was about to commit an offense.

According to the testimony at the hearing on the motion to suppress, Officer DeLong turned on his blue lights because Appellant's license plate was "slightly" askew and in violation of Tennessee Code Annotated section 55-4-110(b), which requires that "[e]very registration plate shall at all times be securely fastened in a horizontal position to the vehicle for which it is issued so to prevent the plate from swinging . . . ." After turning on the blue lights, Appellant engaged Officer DeLong in a high speed chase, reaching speeds of nearly sixty miles per hour before he crashed into another vehicle and ran away from the officer on foot. Eventually, "a scuffle" between Appellant and Officer DeLong ensued. During this scuffle Appellant was placed under arrest. Officer DeLong recovered the blue container containing cocaine "approximate" to the scene of the scuffle. During the motion hearing, the trial court did not view the videotape from the chase which was recorded from Officer DeLong's patrol car. The videotape was, however, introduced at trial. After viewing the videotape during the trial, the trial court determined "the stop that was going to be initiated by the patrolman appeared to be justified on his part for violation of the law requiring the licence [sic] plate to be securely fastened and relatively horizontal."

On appeal, Appellant claims that the seizure of the cocaine was unlawful because it flowed from a constitutionally infirm stop. Appellant's argument fails to recognize the significance of his own volitional conduct when Officer DeLong attempted to initiate the stop. As this Court has recently reiterated, "evidence of a defendant's 'criminal conduct committed subsequent to an illegal arrest, or even as a result thereof, should not be suppressible under the exclusionary rule.'" *State v. Abernathy*, 159 S.W.3d 601, 604 (Tenn. Crim. App. 2004) (quoting *State v. Jerry Wayne Elliott*, No. W1999-00361-CCA-R3-CD, 2001 WL 13233, at *2 (Tenn. Crim. App., at Jackson, Jan. 5, 2001)). Thus, even if the initial seizure of Appellant was constitutionally infirm, new criminal acts

-6-

committed after the stop and seizure provided an independent and constitutionally valid basis for Appellant's arrest. As stated by the United States Court of Appeals for the Fourth Circuit,

> There is a strong policy reason for holding that a new and distinct crime, even if triggered by an illegal stop, is a sufficient intervening event to provide independent grounds for arrest. As . . . recognized [by the United States Court of Appeals for the Eleventh Circuit in *United States v. Bailey*, 691 F.2d 1009, 1017 (11th Cir. 1982) ], "[a] contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct." Because the arrest for the new, distinct crime is lawful, evidence seized in a search incident to that lawful arrest is admissible.

*United States v. Sprinkle*, 106 F.3d 613, 619 (4th Cir. 1997) (citations ommitted). *See also State v. Robert Lee Mallard*, No. M2000-00351-CCA-R3-CD, 2001 WL 178461, at *5 (Tenn. Crim. App., at Nashville, Feb. 23, 2001) (holding that, even if arresting officer's initial seizure of accused was unconstitutional, accused's subsequent actions in attempting to hide evidence constituted "a sufficient intervening event to allow for independent grounds for the arrest and subsequent search incident to the arrest," such that evidence obtained during the search was not subject to suppression); *State v. George Wesley Harville, Jr.*, No. 01-C-01-9607-CC-00300, 1997 WL 661726, at *3 (Tenn. Crim. App., at Nashville, Oct. 24, 1997) (holding that evidence pertaining to an aggravated assault against the arresting officer was admissible, even if the preceding stop or arrest was illegal, because proof of such conduct "is not obtained as a result of the exploitation of the illegal stop or arrest.").

The same analysis pertains to the case before us. The evidence supporting the charges of which Appellant was found guilty was gathered not as a result of the allegedly invalid stop, but as a result of Appellant's intervening, illegal conduct. That conduct superceded the initial stop insofar as giving the police an independent and constitutionally sound basis for arresting Appellant. Accordingly, the trial court properly denied the motion to suppress. Appellant is not entitled to relief on this issue.

*Motion for New Trial*

Appellant argues on appeal that the trial court erred in summarily denying his motion for new trial and amended motion for new trial without hearing argument or testimony. Appellant contends that the trial court failed to make specific findings of fact or conclusions of law in denying the order. Appellant claims that the hearing on the motion for new trial was waived by an attorney that did not have the authority to do so because there is nothing in the record to indicate that he was the attorney of record for Appellant. Further, Appellant complains that the trial court did not ask Appellant "whether he wished to offer testimony or waive a hearing." The State counters that the trial court properly denied the motion for new trial.

The record reflects that Appellant was convicted on April 15, 2005. On May 12, 2005, Appellant filed a timely motion for new trial through trial counsel. Appellant was sentenced in

September of 2005, and in January of 2006, trial counsel filed a motion to amend the motion for new trial. In that motion, trial counsel explained:

> [Appellant's] family has hired several attorneys who, for reasons unknown, have yet to announce. The original motion was filed in the confusion created by several attorneys to preserve [Appellant's] rights. The presumption was that who ever argued this motion would amend it. Due to circumstances beyond [Appellant's] control, that task has fallen back to me, trial counsel . . . . Therefore, I respectfully request this motion be granted to preserve [Appellant's] constitutional rights.

The trial court held a hearing on the motion for new trial in February of 2006. At that hearing, the trial court noted that trial counsel was never "removed as the attorney of record" despite some concerns by Appellant that he wanted to change attorneys. Prior to sentencing, there was apparently some confusion as to who was going to represent Appellant. Appellant mentioned one attorney as a possibility. Some time later, Appellant even indicated to the trial court that he had retained a third attorney to proceed with the motion for new trial and on appeal. All three of these attorneys appeared at the hearing on the motion for new trial. One of the attorneys expressed a desire to go forward with the motion as filed by trial counsel. The trial court commented that there did not "need to be any proof on a Motion for New Trial" and stated that it was prepared to "review the motion" and make a ruling.

Appellant complains that he was somehow prejudiced because no argument was made on the motion. He cites *Summerall v. State*, 560 S.W.2d 413 (Tenn. Crim. App. 1977), to support his assertion that he did not waive a hearing on the motion for new trial "either expressly or impliedly." In *Summerall*, the defendant filed a motion for new trial, but his counsel failed to appear in court to argue the motion. 560 S.W.2d at 413. The State moved to dismiss the motion for "want of prosecution." *Id.* The trial court granted the motion to dismiss without addressing the merits of the motion. *Id.* On appeal, this Court reversed and remanded, ordering the trial court to consider the motion on the merits and determine whether counsel for the defendant waived the argument on the motion. *Id.* at 414. In the case herein, unlike *Summerall*, it appears from the order denying the motion for new trial that the trial court properly considered the motion on the merits before denying the motion. Moreover, no objection was voiced to the trial court's consideration of the motion without argument. Finally, Appellant has failed to show that he was prejudiced in this process. Appellant is not entitled to relief on this issue.

*Lesser Included Offenses*

Appellant argues that the trial court erred by failing to instruct the jury with misdemeanor reckless endangerment as a lesser included offense of felony reckless endangerment. Appellant acknowledges that the record is devoid of a written request for the instruction as required by Tennessee Code Annotated section 40-18-110(c) but contends that the trial court committed plain error by failing to include the instruction. The State concedes that the trial court erred by failing to

instruct on misdemeanor reckless endangerment but argues that the failure to instruct the jury does not constitute reversible error.

We acknowledge that Appellant did not raise the trial court's failure to instruct the jury on the misdemeanor reckless endangerment in his motion for a new trial. Accordingly, we find that Appellant failed to preserve this issue for appeal pursuant to the Tennessee Rules of Appellate Procedure. *See* Tenn. R. App. P. 3(e), and 36(a). Moreover, in this case we are statutorily bound to find that Appellant waived this issue by failing to submit a written request for the lesser included jury instructions at trial. Tennessee Code Annotated section 40-18-110, in pertinent part, provides:

> (b) In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any such charge.

> (c) Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, such instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for new trial or on appeal.

In *State v. Page*, 184 S.W.3d 223 (Tenn. 2006), the Tennessee Supreme Court determined that Tennessee Code Annotated section 40-18-110 was constitutional, concluding that "if a defendant fails to request an instruction on a lesser-included offense in writing at trial, the issue will be waived for purposes of plenary appellate review and cannot be cited as error in a motion for new trial or on appeal." *Page*, 184 S.W.3d at 229. "Tennessee Code Annotated section 40-18-110(c) does not violate a defendant's right to trial by jury." *Id.* at 231. Therefore, we conclude the issue is waived. Our supreme court also made clear, however, that in such a case an appellate court may still review the issue for plain error. *Id.* at 230.

We briefly consider whether it is appropriate to review the failure to charge the complained of lesser included offense under the doctrine of plain error. The doctrine of plain error provides that where necessary to do substantial justice, an appellate court may take notice of a "plain error" not raised at trial if it affected a substantial right of the defendant. Tenn. R. Crim. P. 52(b). In order to review an issue under the plain error doctrine, five factors must be present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused must not have waived the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. *See State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (adopting five factors set out in *State v. Adkisson*, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994)). As our supreme court stated in *Page*, "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *Page*, 184 S.W.3d at 231. Appellate courts are advised to use plain error sparingly in recognizing

errors that have not been raised by the parties or have been waived due to a procedural default. *State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007). When an issue is raised regarding the trial court's failure to instruct on a lesser included offense, our analysis typically involves a determination of: (1) whether the offense is a lesser included offense under the test adopted in *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999); (2) whether the evidence supports an instruction on the lesser included offense; and (3) whether the failure to instruct on the lesser included offense constitutes harmless error. *State v. Allen*, 69 S.W.3d 181, 187 (Tenn. 2002).

In this case, the State concedes that misdemeanor reckless endangerment is a lesser included offense of felony reckless endangerment. *See State v. Leslie R. Holt*, No. 01C01-9804-CR-00188, 1999 WL 126684, at *3 (Tenn. Crim. App., at Knoxville, Mar. 11, 1999) (citing *State v. Lewis*, 978 S.W.2d 558, 565 (Tenn. Crim. App. 1997)). Further, we determine that the evidence presented at trial, taken in a light most favorable to Appellant, would have supported an instruction on the lesser included offense. Appellant claimed that Officer DeLong hit his vehicle with the patrol car, causing it to strike the truck. In other words, Appellant claimed that he did not use his vehicle as a deadly weapon because Officer DeLong caused him to hit the truck. While Officer DeLong's testimony contradicted that of Appellant, the determination of the degree of reckless endangerment based on all the evidence presented was for the jury. This Court has held that in cases where the proof of felony reckless endangerment was not so overwhelming that the jury inevitably would have chosen the greater offense over the lesser offense if given the choice, failure to charge the jury with the lesser included offense is reversible error. *See State v. Brandon R. Patrick*, No. 03C01-9712-CC-00548, 1999 WL 84076, at *3 (Tenn. Crim. App., at Knoxville, Feb. 19, 1999); *Leslie R. Holt*, 1999 WL 126684, at *3. Accordingly, Appellant's conviction for felony reckless endangerment is reversed and remanded for a new trial.

### Instruction on Casual Exchange

Appellant next argues that the trial court erred in failing to instruct the jury as to the "inference [regarding casual exchange] mandated by Tennessee Code Annotated section 39-17-419"[4] with respect to his charge for possession of cocaine with intent to sell. The State disagrees, contending that the circumstances do not support an inference of casual exchange.

---

[4]Tennessee Code Annotated section 39-17-419 provides:

> It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing. It may be inferred from circumstances indicating a casual exchange among individuals of a small amount of a controlled substance or substances that the controlled substance or substances so exchanged were possessed not with the purpose of selling or otherwise dispensing in violation of the provisions of § 39-17-417(a). The inferences shall be transmitted to the jury by the trial judge's charge, and the jury will consider the inferences along with the nature of the substance possessed when affixing the penalty.

First of all, we find it important to note that casual exchange is not a lesser included offense of possession of cocaine with the intent to sell. *State v. Timothy Wayne Grimes*, No. M2001-01460-CCA-R3-CD, 2002 WL 31373472, at *6 (Tenn. Crim. App., at Nashville, Oct. 16, 2002). We also acknowledge that Appellant did not request such an instruction at trial and did not raise the trial court's failure to instruct the jury on the inference of casual exchange in his motion for a new trial. Accordingly, we find that Appellant failed to preserve this issue for appeal. *See* Tenn. R. App. P. 3(e), and 36(a). Moreover, we decline to address this issue as plain error. *See Bledsoe*, 226 S.W.3d at 354. This issue is waived.

## *Sufficiency of the Evidence*

Appellant challenges the sufficiency of the evidence for his convictions for possession of more than .5 grams of cocaine with the intent to sell, evading arrest, and reckless endangerment.[5] Specifically, Appellant argues that: (1) there was no evidence he possessed the cocaine with the intent to sell; (2) he did not receive a signal to stop from Officer DeLong and then intentionally flee after receiving that signal; and (3) he did not drive erratically or at excessive speeds and did not hit another vehicle until after being struck by Officer DeLong. The State disagrees, arguing that the evidence supports the convictions.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions of

---

[5] Because we have already reversed and remanded Appellant's conviction for felony reckless endangerment, we find it unnecessary to address the sufficiency of the evidence with respect to that conviction. We also note that, although not raised by either party on appeal, there was a potential issue with regard to double jeopardy as a result of Appellant's dual convictions for evading arrest and reckless endangerment. *See, e.g., State v. Jimmy Lee Cullop, Jr.*, No. E2000-00095-CCA-R3-CD, 2001 WL 378543, at *6 (Tenn. Crim. App., at Knoxville, Apr. 17, 2001). However, our reversal of Appellant's conviction for reckless endangerment renders this issue moot.

witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996).

Of course, a criminal offense may be established exclusively by circumstantial evidence. *State v. Tharpe*, 726 S.W.2d 896, 900 (Tenn. 1987); *State v. Jones*, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995). However, the trier of fact must be able to "determine from the proof that all other reasonable theories except that of guilt are excluded . . . ." *Jones*, 901 S.W.2d at 396; *see also, e.g., Tharpe*, 726 S.W.2d at 900.

### A.  Possession of Cocaine with Intent to Sell

Appellant was found guilty of violating Tennessee Code Annotated section 39-17-417(a)(4), which makes it a crime to knowingly "possess a controlled substance with intent to manufacture, deliver or sell the controlled substance." A violation of Tennessee Code Annotated section 39-17-417(a)(4) is a class B felony if the amount of the cocaine possessed is more than .5 grams. T.C.A. § 39-17-417(c)(1).

The State unquestionably proved beyond a reasonable doubt that the substance found in the blue container was cocaine and that the weight of the cocaine was .5 grams. Thus, the question is whether Appellant knowingly possessed the cocaine with the intent to sell or deliver it.

"[A] person . . . acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T. C. A. § 39-11-302(b). Further, the trier of fact may infer from the amount of the drugs, along with relevant facts surrounding the arrest, that the drugs were possessed for the purpose of selling them. T. C. A. § 39-17-419; *see also State v. Holt*, 691 S.W.2d 520, 522 (Tenn. 1984); *State v. Willie Earl Kyles, Jr.*, No. W2001-01931-CCA-R3-CD, 2002 WL 927604, at *2 (Tenn. Crim. App., at Jackson, May 3, 2002), *perm. app. denied*, (Tenn. Oct. 21, 2002) (concluding that jury could infer possession of drugs with intent to sell or deliver from amount of drugs and circumstances surrounding arrest of defendant); *State v. James R. Huntington*, No. 02C01-9407-CR-00149, 1995 WL 134589, at *3-4 (Tenn. Crim. App., at Jackson, Mar. 29, 1995), *perm. app. denied*, (Tenn. Jul. 10, 1995) (determining that jury could infer intent to sell marijuana primarily from large quantity of marijuana in defendant's possession).

In the case herein, the proof indicated that, after being involved in an accident, Appellant took off on foot and got into a scuffle with Officer DeLong. After Appellant was arrested, Officer DeLong located a blue container filled with "multiple pieces" of cocaine near the area where the scuffle took place. The container held .5 grams of cocaine. While Appellant admitted being a drug addict and claimed that the cocaine was for his personal use, Officer DeLong testified that this amount was not consistent with personal use. Further, there was no paraphernalia for use of the drugs found, Appellant had $114 in cash and a check for an unspecified amount on his person, and Appellant was spotted by Officer DeLong in a location known for illegal drug sales. These factors indicate the cocaine was not possessed for personal use.

The trier of fact was presented with sufficient evidence to convict Appellant of possession of cocaine with the intent to sell. Appellant's argument regarding the weakness of the evidence points primarily to the weight of the evidence, which was to be determined by the jury. Our role on appeal is simply to determine whether the evidence was legally sufficient for any trier of fact to have found the essential elements of the offense beyond a reasonable doubt. We conclude that it was.

### B. Evading Arrest

Appellant was found guilty of evading arrest. Our code makes it "unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." T.C.A. § 39-16-603(b)(1).

Appellant argues that the proof did not show that he intentionally fled from Officer Delong after he actually "received the signal to stop." We disagree. The proof at trial indicates that Officer DeLong activated his blue lights while following Appellant after noticing that his license plate was slightly tilted. Appellant's own testimony supports his conviction. Appellant stated that he saw the officer "turning his lights on" when he "got to the stop sign." Then, Appellant pondered pulling over, but the "drugs were telling [him] no, no, no. So that's what made me pull off, because I didn't want to throw the drugs away." The evidence was more than sufficient to support Appellant's conviction for evading arrest. Appellant is not entitled to relief on this issue.

### Sentencing

Appellant complains that his felony sentences are excessive and that the trial court improperly ordered consecutive sentencing. Specifically, Appellant argues that the trial court "gave an unwarranted amount of weight" to the enhancement factors it applied to Appellant's sentence and failed to consider any mitigating factors. Further, Appellant argues that the trial court did not make the determinations required by *State v. Wilkerson*, 905 S.W.3d 933, 938 (Tenn. 1995), prior to ordering consecutive sentencing. The State disagrees, arguing that the trial court properly enhanced Appellant's sentence and that the trial court properly ordered consecutive sentencing because Appellant's record of criminal activity was "extensive."

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the presentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. T.C.A. §§ 40-35-103(5), -210(b); *Ashby*,

823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169. In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).[6]

In the case herein, Appellant was convicted of possession of .5 grams or more of cocaine with the intent to sell, evading arrest, reckless endangerment, leaving the scene of an accident, resisting arrest and driving on a suspended license, second offense. In sentencing Appellant, the trial court determined that Appellant had a previous history of criminal convictions in addition to those necessary to establish the range; that he had failed to comply with the conditions of a sentence involving release into the community; that he had no hesitation about committing a crime when the risk to human life was high;[7] and that he committed the offense while on parole. *See* T.C.A. § 40-35-114(1), (8), (10), & (13). The trial court found that no mitigating factors "jump[ed] out" that would apply to Appellant.

Recently, in response to *Cunningham v. California*, 549 U.S. ___, 127 S.Ct. 856 (2007), the Tennessee Supreme Court issued an opinion on remand from the United States Supreme Court in *State v. Gomez*, 239 S.W.3d 733, 737 (Tenn. 2007) ("*Gomez II*") that affects our review of sentencing issues, specifically as to the application of enhancement factors to determine a defendant's sentence. On initial review of the issues in *State v. Gomez*, 163 S.W.3d 632, 650 (Tenn. 2005) ("*Gomez I*"), which was filed on April 15, 2005, the court concluded that the defendants were limited to plain error review of their sentencing claims regarding the Sixth Amendment due to their failure to preserve the issues for plenary review. In *Gomez II*, the court adhered to its decision that the defendants had waived plenary appellate review of their sentencing claims, but determined that

---

[6] In response to *Blakely v. Washington*, 542 U.S. 296 (2004), the Tennessee Legislature amended Tennessee Code Annotated section 40-35-210 so that felonies now have a presumptive sentence beginning at the minimum of the sentencing range. *Compare* T.C.A. § 40-35-210(c) (2003) *with* T.C.A. § 40-35-210(c) (2006). This amendment became effective on June 7, 2005. The legislature also provided that this amendment would apply to defendants who committed a criminal offense on or after June 7, 2005. 2005 Tenn. Pub. Act ch. 353, § 18. In addition, if a defendant committed a criminal offense on or after July 1, 1982 and was sentenced after June 7, 2005, such defendant can elect to be sentenced under these provisions by executing a waiver of their ex post facto protections. *Id*. Appellant herein committed the offenses on October 15, 2002, and was sentenced on September 14, 2005. There is no waiver executed by Appellant in the record herein. Thus, the amendment to Tennessee Code Annotated section 40-35-210 does not apply to Appellant.

[7] While the transcript of the sentencing hearing does not reflect that the trial court applied this enhancement factor, the "Sentencing Findings of Fact" form contained in the record reflects that the trial court applied this enhancement factor to Appellant's sentence.

in light of the *Cunningham* decision, a trial court's enhancement of a defendant's sentence on the basis of judicially determined facts other than the defendant's prior convictions violates the defendant's constitutional rights under the Sixth Amendment to the United States Constitution. *Gomez*, 239 S.W.3d at 740.

In the case herein, Appellant's sentencing hearing was held on September 14, 2005, and his motion for new trial was filed on May 12, 2005, both after the filing of the *Gomez I* opinion. Appellant did not raise a challenge to his sentence based on the Sixth Amendment at his sentencing hearing, in his motion for new trial, or on appeal. Instead, Appellant makes a blanket argument on appeal that the trial court improperly applied enhancement factors to his convictions by giving them an "unwarranted amount of weight" and that the trial court failed to consider appropriate mitigating factors. In *Gomez I*, the court determined that the Sixth Amendment issue was waived because the defendants "did not raise this constitutional challenge at their . . . sentencing hearing or in their motions for new trial, nor did they raise it in the Court of Criminal Appeals." *Gomez*, 163 S.W.3d at 648. After the release of the court's opinion in *Gomez I*, this Court determined that a failure to raise the Sixth Amendment challenge to a sentence at the sentencing hearing results in a waiver of the issue for plenary review. *See, e.g., State v. Mickey Lee Williams*, No. E2004-01617-CCA-R3-CD, 2005 WL 2240736, at *5 (Tenn. Crim. App., at Knoxville, Sept. 15, 2005), *perm. app. denied*, (Tenn. Feb. 21, 2006); *State v. Karl Blake*, No. M2004-02731-CCA-R3-CD, 2005 WL 2205877, at *5 (Tenn. Crim. App., at Nashville, Sept. 8, 2005); *State v. Billy R. Shelley*, No. E2004-00145-CCA-R3-CD, 2005 WL 1798637, at *4 (Tenn. Crim. App., at Knoxville, Jul. 29, 2005), *perm. app. denied*, (Tenn. Dec. 19, 2005). Under similar circumstances as these presented here, *Gomez II* instructed the courts of this state that waived sentencing issues regarding the application of enhancement factors in violation of the Sixth Amendment can be reviewed only via plain error review as embodied in Tennessee Rule of Criminal Procedure 52(b). *Gomez*, 239 S.W.3d at 737.

As noted previously, appellate courts are advised to use plain error review sparingly in recognizing errors that have not been raised by the parties or have been waived due to a procedural default. *Adkisson*, 899 S.W.2d at 639 (quoting *United States v. Gerald*, 624 F.2d 1291, 1299 (5th Cir. 1980)); *see also Bledsoe*, 226 S.W.3d at 354. In this case, therefore, we choose not to review Appellant's sentence via plain error. Appellant makes no claim that his sentence violates his right to a jury trial. Further, Appellant fails to accompany his blanket complaints about his sentence with argument or citation to authority which would show how or why the trial court improperly applied enhancement factors or failed to apply mitigating factors. Tennessee Rule of Appellate Procedure 27(a)(7) provides that a brief shall contain, "[an] argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Tennessee Court of Criminal Appeals Rule 10(b) states that, "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." *See also State v. Sanders*, 842 S.W.2d 257, 260-61 (Tenn. Crim. App. 1992). Appellant does not accompany this blanket complaint about the weight given to enhancement factors with any argument. Furthermore, Appellant's previous criminal convictions

-15-

justified the enhancement of his sentence. The presentence report indicates that Appellant had an extensive criminal history, including, among other things, four convictions for possession of cocaine, one conviction for criminal trespassing, three convictions for resisting arrest, one conviction for evading arrest, one conviction for criminal impersonation, two convictions for driving with a suspended license, one conviction for theft, and a weapons offense. Appellant had so many prior convictions, in fact, that he was a Range II multiple offender for sentencing purposes. This issue is waived.

### *Consecutive Sentencing*

As pointed out by Appellant, a trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists.[8] One of the provisions allowing consecutive sentencing provides that consecutive sentencing is warranted if the defendant is "an offender whose record of criminal activity is extensive." T.C.A. § 40-35-115(b)(2). Additionally, whether sentences are to be served concurrently or consecutively is a matter addressed to the sound discretion of the trial court. *State v. Hastings*, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999).

Appellant argues on appeal that the trial court failed to make findings required by *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995). If the trial court rests its determination of consecutive sentencing on the basis of a defendant's status as a "dangerous offender," the court must make two additional findings. *State v. Imfeld*, 70 S.W .3d 698, 708 (Tenn. 2002). First, the trial court must find that an extended sentence is necessary to protect the public from further criminal conduct by the defendant, and, second, it must find consecutive sentencing to be reasonably related to the severity of the offenses. *Wilkerson*, 905 S.W.2d at 939. The trial court herein did not determine that Appellant was a "dangerous offender," but rather that Appellant had an "extensive" record of criminal activity. Thus, the trial court was not required to make the findings as stated in *Wilkerson*. Further, this Court has determined that an extensive criminal history, standing alone, is enough to justify the imposition of consecutive sentencing. *State v. Adams*, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997); *State v. Kenneth Threalkill*, No. M2006-00555-CCA-R3-CD, 2007 WL 1628870, at *5 (Tenn. Crim. App., at Nashville, June 6, 2007). Appellant is not entitled to relief on this issue.

---

[8]Our supreme court has specifically noted that *Blakely v. Washington*, 542 U.S. 296 (2004), did not impact Tennessee's consecutive sentencing scheme. *State v. Robinson*, 146 S.W.3d 469, 499 n.14 (Tenn. 2004). In addition, this Court has consistently found that *Blakely* does not affect consecutive sentencing determinations. *See State v. Earice Roberts*, No. W2003-02668-CCA-R3-CD, 2004 WL 2715316, at *15 (Tenn. Crim. App., at Jackson, Nov. 23, 2004), *perm. app. denied*, (Tenn. Mar. 21, 2005); *State v. Lawrence Warren Pierce*, No. M2003-01924-CCA-R3-CD, 2004 WL 2533794, at *16 (Tenn. Crim. App., at Nashville, Nov. 9, 2004), *perm. app. denied*, (Tenn. Feb. 28, 2005).

*Conclusion*

For the foregoing reasons, Appellant's conviction for felony reckless endangerment is reversed and remanded for a new trial. In all other respects, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE