# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs December 1, 2009

## STATE OF TENNESSEE v. JOHN WAYNE WRIGHT

**Direct Appeal from the Circuit Court for Chester County**
**No. 08-CR-74     Donald Allen, Judge**

---

**No. W2009-00976-CCA-R3-CD  - Filed September 3, 2010**

---

Defendant, John Wayne Wright, presents for review a certified question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2).  Defendant entered a plea of guilty to possession of more than 0.5 ounces of marijuana with the intent to sell, a Class E felony, and possession of drug paraphernalia, a Class A misdemeanor.  The trial court sentenced Defendant to concurrent sentences of two years for his felony conviction and eleven months, twenty-nine days for his misdemeanor conviction.  Both sentences were to be suspended and Defendant placed on probation after serving forty-five days in confinement.  As a condition of his guilty pleas, Defendant properly reserved two certified questions of law concerning the stop and search of his vehicle and the subsequent search of his home.  After a review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Lloyd R. Tatum, Henderson, Tennessee, for the appellant, John Wayne Wright.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; James G. Woodall, District Attorney General; and Brian Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. Background

After his indictment on the current charges, Defendant filed a motion to suppress the evidence obtained from his vehicle and his residence after police officers initiated a traffic stop of his vehicle. At the suppression hearing, Agent Charles L. White, with the 24th Judicial District Drug Task Force, testified that on August 7, 2008, a "controlled buy" from Defendant had been arranged with a confidential informant. Before the transaction could occur, Agent White was informed that Agent Tim Cunningham, also with the 24th Judicial District Drug Task Force, had stopped Defendant on Highway 69 in Hardin County for violation of the safety belt law. Agent White pulled up as Defendant was exiting his truck. Defendant placed both hands on the side of the truck and "out of the blue" said, "What you're looking for is behind the seat." Agent White said that he asked Defendant if he cared if his vehicle was searched, and Defendant responded, "No, go ahead." Agent White stated that two and one-half pounds of marijuana were found behind the truck's front seat, and Defendant was placed under arrest.

Although he initially denied it, Defendant subsequently acknowledged that he had more marijuana at his residence. Defendant executed a written consent to search his residence, and he was transported to his house in Chester County, accompanied by approximately seven or eight officers. Agent White said:

> once, we got to the house, he kept wanting to take us to where the drugs were in the house, and I told him to stand by until Chester County [law enforcement officials] got there and let them take over because it was in their jurisdiction. [Defendant] kept insisting [on] showing us where it was at [sic] and stuff so we told him to sit down on the couch and wait until they got there . . .

Defendant sat down on the couch next to his wife, Rebecca Adeline Wright. When the Chester County officers arrived, Defendant executed a second consent form. Agent White stated that he located marijuana in a large container and scales in the kitchen during the search. Agent White stated that the search lasted approximately one hour and then Defendant was transported back to Hardin County.

On cross-examination, Agent White said that it was dusk when Defendant was pulled over. Agent White stated that approximately four or five police vehicles with their emergency lights activated surrounded Defendant's vehicle after Defendant pulled over. Agent White explained that the other officers were at the scene because of the scheduled controlled buy. Agent White said that neither he nor Agent Cunningham drew their weapon

-2-

during the traffic stop, but he could not say whether any of the other officers did. Agent White stated that the other officers did not say anything to Defendant.

Steve Davidson, an investigator for the Chester County Sheriff's Department, testified that he and Investigator Gary Davidson met the Hardin County law enforcement officials at Defendant's home on August 7, 2008. Investigator Davidson described the atmosphere in Defendant's house as calm. Defendant was sitting on the couch, handcuffed, and Ms. Wright was sitting next to him. Defendant made jokes and laughed, but Investigator Davidson described Ms. Wright as "pretty solemn." Investigator Davidson said that there were between four and eight officers in the living room.

Investigator Davidson asked Defendant if he would consent to a search of the residence, and Defendant responded, "Absolutely." Investigator Davidson started to read the consent form to Defendant, but Defendant interrupted and said, "I'll sign it. No problem." Investigator Davidson finished reading the form out loud, and Defendant signed it. Investigator Davidson stated that he discovered several small bags of marijuana and packing material in a bedroom and a larger amount of marijuana in the kitchen.

Defendant testified that he was driving down Highway 69 when he observed Agent Cunningham pass his vehicle in an unmarked Ford truck. Defendant passed Chalk Road and observed the agent's vehicle parked on the side of Chalk Road facing Highway 69. Agent Cunningham caught up with Defendant after he had driven between three and five miles. Defendant stated that after he was stopped, he "realized something bad was happening." Defendant said that approximately six or seven police vehicles "just [came] from everywhere."

Defendant stated that he was wearing his seat belt when he was pulled over. Defendant reached down to unbuckle the seat belt and a Hardin County police officer approached him with his gun drawn, shouting for Defendant to exit his truck. Defendant told him, "Calm down. I'm getting out." The officer handcuffed Defendant and explained that it was for protection. Defendant said that approximately four officers had their weapons drawn even though Defendant was handcuffed.

Defendant said that one of the officers asked him what was in the back of the truck. As Defendant explained how to lift up the top covering the back of the truck, Defendant said that an officer ripped open the passenger side door so that the door swung all the way to the side of the truck. Defendant yelled, "Hold on, man. That's uncalled for. It's right there." Defendant said that Agent White told him that if Defendant did not consent to a search of his home "whoever was there was going to jail, period." Defendant stated that he consented to the search because Ms. Wright was at the house.

-3-

On cross-examination, Defendant said that he recognized Agent Cunningham's truck as he passed Defendant, but Defendant could not actually see the driver. Defendant said that the headlights of Agent Cunningham's truck were aimed toward the driver's side of Defendant's truck. Defendant, however, insisted that it was too dark to see whether he was wearing his seat belt even with the headlights on. Defendant said that the officers did not ask his consent to search his truck but "went straight to tearing it up." Defendant did not recollect the officers telling him he was under arrest, but he believed he was after he was handcuffed. Defendant said that he told the officers that there was marijuana in the kitchen because he did not want them to tear up his house like they did his truck. Defendant acknowledged that none of the Chester County law enforcement officials coerced him into signing the consent form.

The trial court denied Defendant's motion to suppress, finding that Agent Cunningham initiated a lawful stop of Defendant's vehicle after observing that Defendant was not wearing his seat belt in violation of Tennessee Code Annotated section 55-9-603. The trial court found Agent White's and Investigator Davidson's testimony credible, and found that Defendant voluntarily consented to a search of his truck and residence.

After the trial court denied his motion to suppress, Defendant entered a plea of guilty to possession of more than 0.5 ounces of marijuana with the intent to sell and possession of drug paraphernalia. Pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure, Defendant properly reserved the following two certified questions of law: (1) "Whether or not the Court erred in overruling defendant's Motion to Suppress wherein the Court found that Hardin County officers had reasonable suspicion to stop defendant's vehicle and that the defendant voluntarily consented to a search of his vehicle, revealing illegal marijuana contained therein"; and (2) "Whether or not the Court erred in further finding that the defendant's subsequent consent to search his house in Chester County, Tennessee was voluntary and not coerced."

## II. Analysis

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence and resolve any conflicts in the evidence. *State v. Odom*, 28 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). However, this Court is not bound by the trial court's conclusions of law. *State v. Randolph*, 74 S.W.3d 330, 333 (Tenn. 2002). The application of the law to the

facts found by the trial court are questions of law that this court reviews de novo. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). The defendant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. *Braziel v. State*, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "'article 1, section 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment.'" *State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting *Sneed v. State*, 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968)). The stop of an automobile by a law enforcement officer constitutes a seizure under both the United States and Tennessee Constitutions. *State v. Nelson*, 275 S.W.3d 851, 860 (Tenn. Crim. App. 2008). "Under both constitutions, 'a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement.'" *Id*. (quoting *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)).

One such exception is a brief investigatory stop by a law enforcement officer if the officer has a reasonable suspicion, based upon specific and articulable facts, that a person has either committed a criminal offense or is about to commit a criminal offense. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). This narrow exception has been extended to the investigatory stop of vehicles. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 881, 95 S. Ct. 2574, 2580 (1975); *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). In evaluating whether a police officer has a reasonable suspicion, supported by specific and articulable facts, a court must consider the totality of the circumstances. *Binette*, 33 S.W.3d at 218. A vehicle stop is constitutional if an officer has reasonable suspicion to believe that a traffic violation has occurred. *State v. Vineyard*, 958 S.W.2d 730, 734 (Tenn. 1997).

Another established exception to the warrant requirement is a consensual search. "For consent to pass 'constitutional muster,' it must be 'unequivocal, specific, intelligently given and uncontaminated by duress or coercion.'" *State v. Cox*, 171 S.W.3d 174, 179 (Tenn. 2005) (quoting *State v. Simpson*, 968 S.W.2d 776, 784 (Tenn. 1998)). "The question of whether an accused voluntarily consented to the search is a question of fact which focuses upon the totality of the circumstances." *State v. Ashworth*, 3 S.W.3d 25, 29 (Tenn. Crim. App. 1999) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 248-49, 93 S.Ct. 2041, 2059 (1973)). In evaluating the voluntariness of consent, factors to consider may include (1) the time and place of the encounter; (2) whether the encounter was in a public or secluded place; (3) the number of officers present; (4) the degree of hostility; (5) whether weapons were displayed; (6) whether consent was requested; and (7) whether the consenter initiated contact

with the police. *State v. Cox*, 171 S.W.3d 174, 185 (Tenn. 2005) (citing 79 C.J.S. Searches and Seizures § 119(b) (1995 & Supp.2004)). Consideration may also be given to the personal characteristics of the individual giving consent including his or her age, intelligence and prior contact with law enforcement officials. *Cox*, 171 S.W.3d at 185.

Defendant argues for the first time on appeal that he was unlawfully arrested following the traffic stop for violation of the seat belt law. Defendant contends that he was ordered out of his truck by eight or nine police officers and immediately handcuffed instead of receiving a citation and allowed to proceed on his way. *See* T.C.A. § 55-9-603(f)(1) (providing that "[a] law enforcement officer observing a violation of [the seat belt law] shall issue a citation to the violator, but shall not arrest or take into custody any person solely for a violation of this section." Defendant contends, therefore, that the evidence obtained pursuant to his subsequent consents to search his vehicle and home should have been suppressed as the "fruit of the poisonous tree." Defendant further argues that his consents to search were only "an acquiescence to a search by authorities that had already begun" and was, therefore, not voluntarily given under the circumstances surrounding the stop.

Defendant did not question the legality of his arrest following the stop of his vehicle in either of his two certified questions of law. Our supreme court has clearly stated that "[n]o issue beyond the scope of the certified question will be considered" on appeal. *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988). The burden "of reserving articulating, and identifying the issue" rests with the defendant. *State v. Pendergrass*, 937 S.W.2d 834, 838 (Tenn. 1996). Because Defendant did not properly reserve this issue, we are without jurisdiction to consider it on appeal.

Defendant, in his brief, also does not address his reserved issue of whether Agent Cunningham had sufficient reasonable cause to initiate a traffic stop. We note only that a police officer's observation that a defendant is not wearing his or her seat belt while driving provides probable cause to initiate a traffic stop. *State v. Harris*, 280 S.W.3d 832, 839-40 (Tenn. 2008)

Defendant argues that he did not voluntarily consent to the search of his vehicle and residence but rather acquiesced to a search that had already begun. The encounter with Defendant occurred at approximately 9:00 p.m. on a summer evening on a public highway in a rural area. Defendant testified that he recognized Agent Cunningham's unmarked vehicle shortly before the initial stop. Agent White testified that several officers other than himself and Agent Cunningham were in the vicinity of the traffic stop because of the scheduled controlled buy. However, these officers did not say anything to Defendant. Agent White did not know whether any of the officers had their weapons drawn, but he stated that he personally did not show his weapon. The trial court found credible the testimony of Agent

White and Investigator Davidson that Defendant not only cooperated with the law enforcement officials but was eager to do so. Agent White testified that Defendant jumped out of his vehicle and spontaneously indicated that he had marijuana in his truck. Defendant then gave his consent to the search of his truck. Defendant signed two written consent forms before the search of his residence and voluntarily told the law enforcement officials where they could find drugs and drug paraphernalia. Defendant was thirty-six years old at the time of the incident and had extensive prior encounters with the legal system.

Based on our review, we conclude that the evidence does not preponderate against the trial court's finding that Defendant consented to a search of his vehicle and a search of his residence, and that such consents were voluntarily, unequivocally, and intelligently given without coercion or intimidation. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE