# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs September 16, 2014

## STATE OF TENNESSEE v. BRENT ALLEN BLYE

**Direct Appeal from the Circuit Court for Sullivan County**
**No. S50833     R. Jerry Beck, Judge**

---

**No. E2014-00220-CCA-R3-CD - Filed July 30, 2015**

---

A Sullivan County Circuit Court Jury convicted the appellant, Brent Allen Blye, of possession of 26 grams or more of cocaine with the intent to sell, a Class B felony; simple possession of dihydrocodeinone, a Class A misdemeanor; and simple possession of less than one-half ounce of marijuana, a Class A misdemeanor. The trial court sentenced him as a Range II, multiple offender to an effective sentence of twelve years in the Tennessee Department of Correction. In this delayed appeal, the appellant contends that the trial court erred by refusing to allow him to question a co-defendant about her criminal history; that the trial court erred by giving, or failing to give, certain jury instructions; and that the trial court erred by allowing a police detective to testify about the value of the cocaine. The State concedes that the trial court erred by instructing the jury that the simple possession offenses could be committed with a mens rea of recklessness but contends that the error was harmless. The State maintains that the trial court committed no other error. Upon review, we conclude that the trial court erred in its jury instruction regarding the necessary mens rea for the lesser-included offense of simple possession of cocaine but that the error was harmless. For the charged offenses of simple possession of dihydrocodeinone and marijuana, we conclude that the trial court also erred in its instructions on the necessary mens rea and that the error was not harmless. Therefore, we must reverse those convictions and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed in Part, Reversed in Part; Case Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROGER A. PAGE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Kenneth E. Hill (on appeal), Kingsport, Tennessee, and Perry L. Stout (at trial), Johnson City, Tennessee, for the appellant, Brent Allen Blye.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Senior Counsel;

Barry Staubus, District Attorney General; and William Harper, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. Factual Background

On June 22, 2005, the appellant was charged by presentment with count one, possession of 26 grams or more of cocaine, a Class B felony; count two, possession of dihydrocodeinone, a Class A misdemeanor; and count three, possession of less than one-half ounce of marijuana, a Class A misdemeanor. At trial, the following evidence was adduced:

> On November 12, 2004, Detective Jason Grant Bellamy of the Kingsport Police Department, accompanied by Detective Mark Mason and Officer Jeff Kendrick, went to the Comfort Inn in Kingsport, Tennessee to look for the [appellant]. When they arrived at the hotel, Detective Bellamy asked the staff if the [appellant] had rented a room. When the staff told him that the [appellant] did not have a room at the hotel, he asked if Savonna Collier, who had been seen with the [appellant] and identified as his girlfriend, had rented a room. They learned that Ms. Collier had rented room 264.
>
> Detective Bellamy and the other officers went to room 264. Ms. Collier answered the door, and after they identified themselves, Ms. Collier allowed them to come inside. They found the [appellant] asleep on the bed closest to the door, wearing only a thin shirt, jeans, and socks. They arrested the [appellant]. After the [appellant] was taken from the room, Ms. Collier asked Detective Bellamy if he would let the [appellant] have his jacket, which had been underneath the [appellant] on the bed. Detective Bellamy retrieved the jacket from the bed and searched it. Inside the jacket, he found three blue pills labeled "Watson 5-4-0" and a prescription bottle filled with what appeared to be crack cocaine. Detective Bellamy collected the evidence and asked Ms. Collier to accompany him to the police station. Ms. Collier complied, and by that time, the [appellant] had already left in a patrol car. Once they arrived at the police station, Detective Bellamy gave the items retrieved from the jacket to Detective Sean Chambers, who identified the

contents of the pill bottle as cocaine. Detective Chambers spoke with Ms. Collier, who gave him the key to the hotel room.

Detective Chambers went to the hotel with Detective Sergeant Dale Phipps and Detective Steve Hammonds. They searched Ms. Collier's room and found several items in the drawer of the table that was located between the two beds in the room. Inside the drawer, Detective Chambers found a plastic bag that contained approximately six other plastic bags. In two bags, he found plant material. In three bags, he found a white substance. In another bag, he found tan-colored rocks. He also found "cash in the amount of $612" and two receipts. Both receipts referenced the [appellant]. In the storage area underneath the drawer of the table, Detective Bellamy found several tan-colored rocks on top of a Comfort Inn notepad. On the bed closest to the door, he found a cigarette box that contained a blue pill, labeled "Watson 5-4-0" and a small amount of plant material. He found a blue shirt on the same bed, and in the left pocket of the shirt, he found a hand-rolled cigarette. He continued to search the rest of the room but did not find anything else. The room did not contain any baggage or clothing other than the blue shirt found on the bed. The room also did not contain any crack pipes, straws, or syringes that may have been used to ingest the drugs found in the room. Detective Chambers later learned that a razorblade had been found on the [appellant]. Detective Chambers then went to the hotel office and retrieved a copy of the registration form, which showed that the room was registered to Ms. Collier and that two individuals were staying in the room.

According to Detective Chambers, the approximate value of the cocaine found in the hotel room was $3,000. His estimate was based on the weight of the cocaine and the "going price in the city of Kingsport." He stated that the crack rocks that were found in the room would normally be sold as "individual rocks" after they were "broken down into smaller quantities." He also stated that the crack rocks could be sold as they were found.

The rocks found in the pill bottle contained cocaine base and weighed 16.84 grams. The white powder found in the three

bags contained cocaine and weighed 6.93 grams. The rocks found in the other plastic bag contained cocaine base and weighed 1.79 grams, .44 grams, and 4.36 grams. The rocks found in the storage area of the bedside table contained cocaine base and weighed .39 grams. Thus, there was a total of 23.8 grams of crack rocks, and 6.93 grams of powder cocaine. The plant material was tested and found to contain marijuana, and the total weight of the plant material was 5.9 grams. The blue pills were tested and found to contain Dihydrocodeinone, a Schedule III drug.

Brent A. Blye v. State, No. E2012-02626-CCA-R3-PC, 2013 WL 3973468, at *1-2 (Tenn. Crim. App. at Knoxville, Aug. 5, 2013); see also State v. Brent Allen Blye, No. E2008-00976-CCA-R3-CD, 2011 WL 529515, at *5-7 (Tenn. Crim. App. at Knoxville, Feb. 14, 2011).

At trial, the defense argued that the appellant was in the motel room for reasons other than dealing drugs and that the drugs belonged to Ms. Collier. The jury rejected the appellant's argument and convicted the appellant of the charged offenses. The appellant pursued a direct appeal; however, he failed to file a timely motion for new trial, and this court's review was limited to addressing the sufficiency of the convicting evidence. Blye, No. E2008-00976-CCA-R3-CD, 2011 WL 529515, at *3-4. Upon concluding that the evidence was sufficient, this court affirmed the appellant's convictions.[1] Id. at *7.

Thereafter, the appellant filed a petition for post-conviction relief, which was denied by the court. On appeal, this court remanded the case to the trial court "to determine whether, but for counsel's deficient performance, a motion for new trial would have been filed raising issues in addition to sufficiency of the evidence." Blye, No. E2012-02626-CCA-R3-PC, 2013 WL 3973468, at *12. On remand, the trial court found that the appellant was entitled to a delayed appeal.

Subsequently, the appellant filed a motion for new trial, raising numerous issues, including (1) that the trial court erred by refusing to allow the appellant to question Ms. Collier about her prior convictions and charges; (2) that the trial court erroneously instructed the jury that they could not consider comments about Ms. Collier as evidence; (3) that the trial court failed to instruct the jury on various lesser-included offenses; (4) that the trial court erred by instructing the jury that "possession/casual exchange" required the mens rea of

---

[1]Following the direct appeal, the appellant and the State entered into an agreement regarding sentencing.

-4-

recklessness; and (5) that the trial court erred by allowing Detective Chambers to testify about the value of the drugs. The trial court denied the motion, and the appellant timely filed a notice of appeal.

## II.  Analysis

### A.  Co-Defendant's Criminal History

The appellant first challenges the trial court's decision to limit his direct examination of his co-defendant, Ms. Collier. The record reflects that prior to the close of the State's proof, defense counsel announced his intention to call Ms. Collier as a defense witness. The trial court stated that Ms. Collier, who was represented by counsel, might invoke her Fifth Amendment protection against self-incrimination. Defense counsel argued that he should be allowed to question Ms. Collier about her prior record for which she had no Fifth Amendment privilege. Defense counsel explained:

> [T]he prior record concerns prostitution. And the theory being that there's two people in the room. The cocaine has to belong to somebody. She rented the room herself in cash. And there was no luggage or clothing in the room, so there could be more going on in the room than selling dope.
>
> . . . .
>
> [A]s long as I don't ask her anything that would incriminate her to be charged with a crime presently, she's just another witness and answering questions.

The trial court noted that defense counsel was "correct to a point" but that "there's got to be a theory, a legal theory that I can let that type of testimony in. I know where you're going. You want to show she's a prostitute." Defense counsel clarified, "No. That she has been in the past." The trial court stated that the questioning would violate Ms. Collier's Fifth Amendment right against self-incrimination, noting that Ms. Collier could be indicted if she admitted to prostitution in the motel room.

The trial court again asked defense counsel to provide a legal basis for questioning Ms. Collier about her prior criminal history. The court noted that defense counsel could not question Ms. Collier pursuant to Tennessee Rule of Evidence 404(b) because "if this was a defendant under 404(b) . . . , you can't use it to show a propensity to commit a crime." Defense counsel answered, "I'm really just at a loss[.]" The trial court referred to Tennessee

Rule of Evidence 404(a) but noted that "this is not the criminal accused we're dealing with, and we're not dealing with a victim" and that "you're not offering this for impeachment, you're offering it as substantive evidence."

The trial court held a jury-out hearing so that counsel could question Ms. Collier. The court noted that her attorney was present. As soon as defense counsel began questioning Ms. Collier, her counsel immediately objected, advising the court that Ms. Collier would be invoking her Fifth Amendment right and that "I don't want her to say anything that touches the facts of the charges." The trial court asked Ms. Collier if she intended to invoke her Fifth Amendment right against self-incrimination regarding what occurred in the motel room, and Ms. Collier responded in the affirmative. Defense counsel then asked Ms. Collier how she met the appellant, and she again invoked her Fifth Amendment right. The trial court stated that Ms. Collier could invoke the Fifth Amendment because "that shows her association" with the appellant. Upon further questioning by defense counsel, Ms. Collier acknowledged that she was arrested in Nevada on March 31, 2004, for "solicitation or engaging in prostitution" but said that she had never gone to court on that charge. She acknowledged being arrested in Florida for prostitution on January 28, 2005, and on March 10, 2005, but denied being convicted of either charge. She also acknowledged that she was arrested in Florida on a charge of "solicitation . . . of another for lewdness" on March 15, 2005, but said that she could not recall the disposition of that case. However, her counsel ultimately conceded that Ms. Collier entered a plea of nolo contendere on April 20, 2005.

The trial court held that the arrests and conviction that occurred after the instant offense were inadmissible "because they wouldn't go to any motive, intent at the time of the alleged crime." Furthermore, the trial court said that it failed to discern how the charges amassed after the instant offenses were relevant. The court observed that the Nevada prostitution charge occurred before the instant offenses but that Ms. Collier denied being convicted of the offense. The trial court stated, and defense counsel agreed, that to be admissible, "[i]t'd have to be the level of a conviction, not just an accusation."

Defense counsel maintained that Ms. Collier's history of prostitution was relevant to establish "an alternative reason [the appellant] was in the room." The court responded that defense counsel's theory was "pure speculation," noting that no proof had been introduced to suggest Ms. Collier was acting as a prostitute on the day of the offense. The court held that under Tennessee Rule of Evidence 403, admitting proof of Ms. Collier's arrests and conviction would confuse the jury; accordingly, the court found that her criminal history was inadmissible.

The appellant argues that the trial court erroneously excluded Ms. Collier's prior conviction on Fifth Amendment grounds. However, the record belies that contention. The

court ruled that Ms. Collier could invoke her privilege against self-incrimination regarding her role in what transpired in the motel room. The trial court then ruled that Ms. Collier's prior criminal history was inadmissible because it was irrelevant and, if somehow relevant, was speculative and confusing to the instant charges.

Next, the appellant claims that evidence of Ms. Collier's prostitution was relevant to his claim that he was in her motel room only to procure her services. He contends that evidence of her prostitution was the "cornerstone" of his defense and that the trial court's excluding the evidence deprived him of his right to present that defense.

The State argues that "the nature of the [appellant's] relationship with Ms. Collier has no bearing on which party owned the drugs recovered." We disagree with the State. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401; see also State v. Kennedy, 7 S.W.3d 58, 68 (Tenn. Crim. App. 1999). At trial, Ms. Collier was identified as the appellant's girlfriend, which supported the State's theory that she and the appellant jointly owned the drugs. However, if the appellant could show that they did not have a personal relationship and that he was in her room only as a client, then such evidence would support his defense that the drugs were hers alone. We note that the trial court also recognized the significance of Ms. Collier's relationship with the appellant, ruling that she could invoke her Fifth Amendment right with regard to how she met the appellant. Therefore, we agree with the appellant that whether Ms. Collier was acting as a prostitute in the motel room was relevant to his defense.

Even relevant evidence, though, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. It is within the trial court's discretion to determine whether the proffered evidence is relevant; thus, we will not overturn the trial court's decision absent an abuse of discretion. State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995).

After careful consideration, the trial court found that even if Ms. Collier's prior arrests and conviction for prostitution were relevant, their probative value was substantially outweighed by the potential for confusion of the issues pursuant to Tennessee Rule of Evidence 403 because "there's not one scintilla of proof that on the day of this crime [Ms. Collier] was acting as a prostitute." We agree with the trial court. Moreover, the appellant was attempting to use Ms. Collier's prior criminal history of prostitution as substantive evidence that she was acting as a prostitute on November 12, 2004, which is specifically

prohibited by Tennessee Rule of Evidence 404(a). See Tenn. R. Evid. 404(a) (providing that generally "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion"). Therefore, we conclude that the appellant is not entitled to relief.

## B. Jury Instructions

The appellant raises several issues regarding the trial court's instructions to the jury. "It is well-settled that a defendant has a constitutional right to a complete and correct charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." State v. Dorantes, 331 S.W.3d 370, 390 (Tenn. 2011). This court "must review the entire [jury] charge and only invalidate it if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law." Forbes, 918 S.W.2d at 447. A charge resulting in prejudicial error is one that fails to fairly submit the legal issues to the jury or misleads the jury about the applicable law. State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997). "Whether jury instructions are sufficient is a question of law appellate courts review de novo with no presumption of correctness." State v. Clark, 452 S.W.3d 268, 295 (Tenn. 2014).

### 1. Limiting Instruction

The appellant challenges the trial court's instruction to the jury regarding how to consider evidence regarding Ms. Collier at trial. To put the appellant's complaint in perspective, we will summarize the lengthy road that led to the contested instruction.

The record reveals that at the beginning of voir dire, the trial court told the jury that

> [t]here is a blacked-out portion of the indictment alleging there is a co-defendant. You should not worry about that. That defendant is not on trial. You should not – as far as whether that person may be guilty or not guilty, you won't be deciding that. So unless it[] becomes material . . . in some way under the evidence, you should disregard it. It could be that it might be mentioned and might be material as to at least who the other person [is who was] charged. But you should not worry about that at this time. And you won't be making any decision in regards to any alleged co-defendant. . . .

Thereafter, the jurors were questioned about whether they knew any of the parties involved in the case or had any potential bias that could impact the case. During the course

of the questioning, the following colloquy occurred:

> [Defense counsel:] Also, you know, there – there is a co-defendant in this case. And like the judge said, you don't consider her guilt – or his or her guilt in any way whatsoever. But there might be . . .
>
> [Trial court:] Well, they're – they're not trying the co-defendant in the . . .
>
> The co-defendant is . . . [Ms.] Collier.
>
> [Defense counsel:] Yes. Your Honor.
>
> [Trial court:] You can ask . . .
>
> All right. Now, they're not trying the co-defendant.
>
> [Defense counsel:] Right.
>
> [Trial court:] And they're not to think they are.
>
> [Defense counsel:] Right.
>
> [Trial court:] So they're only trying the case of *State v. Blye*.
>
> [Defense counsel:] Right. . . .

After the jury was chosen and sworn, opening statements were given. In particular, defense counsel stated that the appellant was in the room "for a purpose, but the purpose had nothing to do with drugs. . . . I think you'll find that . . . [the appellant] was not . . . in the best place he could be or doing the greatest thing he could do. But he wasn't there for the drugs . . . and didn't even know about them."

During the State's case-in-chief, the trial court held a bench conference regarding the admissibility of a laboratory report containing the results of testing conducted on various substances found in the motel room. During the bench conference, the State informed the trial court that the original laboratory report mentioned Ms. Collier's name and requested permission to introduce a copy with her name redacted. Defense counsel objected, stating,

"I wouldn't want it altered, Your Honor." The court sustained the objection, noting that in the course of opening statements, defense counsel had taken "the position the – these things could have belonged to anybody, may have belonged to [Ms.] Collier. It's pretty well established at this point that Ms. Collier rented the room." The court stated that it hoped it had not misinformed the jury earlier and that the jury could "consider evidence about [Ms.] Collier if it's material or relevant. . . . What I was telling the [j]ury, don't worry about trying Ms. Collier 'cause she's not on trial." Nevertheless, the court acknowledged that "obviously Ms. Collier's going to have some – already has some presence in the lawsuit." The court asked whether the parties thought the court had "misinstructed anything," and defense counsel stated, "I don't think so."

At that point, the trial court gave the jury the following limiting instruction:

> If you remember, yesterday we talked about Ms. Collier, Savonna Collier, the co-defendant. Now, you're not trying her. She's not on trial in this case. But there has been – I've allowed some testimony about her where her name was mentioned. And I'll not try to do any summary of it, but her name has been mentioned. You can consider any witness's testimony for what it's worth – you have to decide what weight to give it – where she may be mentioned. You all follow me?
>
> Yesterday I just wanted to make sure that you all knew you weren't trying Ms. Collier, because you're not. But where Ms. Collier has been mentioned in the testimony, you can consider that evidence for what it's worth to you. And, of course, you all are – the reason I say that to you, you all are the trier of facts and the exclusive judges of the evidence. So you can't consider these comments you've heard about [Ms.] Collier as evidence in the case involving where [the appellant] is charged. Does everybody understand that? All right.

On appeal, the appellant challenges the foregoing limiting instruction, arguing that "[g]iven the volume of testimony relating to the co-defendant's involvement and [its] direct relevance to the question of whether [the appellant] or she was in possession of the drugs, it was error to inform the jury that they 'can't consider these comments [they've] heard about [Ms.] Collier as evidence.'" The State acknowledges that the trial court made "a slip of the tongue" when it informed the jury, "[Y]ou can't consider these comments you've heard about [Ms.] Collier as evidence in the case involving where [the appellant] is charged." However, the State contends that the instruction, when read in its entirety, properly instructed the jury

that they "should consider evidence regarding [Ms.] Collier how [they] saw fit but that [they were] not tasked with determining her guilt."

Initially, we note that the appellant did not object to the trial court's instruction at trial. Indeed, defense counsel agreed that the trial court had not "misinstructed anything," arguably waiving the issue. See Tenn. R. App. P. 36(a) (providing that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"). Therefore, we may only grant relief in the event of plain error. Tenn. R. App. P. 36(b) (providing that "[w]hen necessary to do substantial justice, [this] court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal").

We should not consider an issue as plain error unless all five of the following factors are met:

> a) the record must clearly establish what occurred in the trial court; b) a clear and unequivocal rule of law must have been breached; c) a substantial right of the accused must have been adversely affected; d) the accused did not waive the issue for tactical reasons; and e) consideration of the error is "necessary to do substantial justice."

State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted); see also State v. Smith, 24 S.W.3d 274, 283 (Tenn. 2000) (adopting the Adkisson test for determining plain error). Furthermore, the "plain error must be of such a great magnitude that it probably changed the outcome of the trial." Adkisson, 899 S.W.2d at 642 (internal quotations and citation omitted).

As we noted earlier, "[j]ury instructions must be reviewed in their entirety. Phrases may not be examined in isolation." State v. Rimmer, 250 S.W.3d 12, 31 (Tenn. 2008) (citation omitted). The limiting instruction, when read as a whole, did not prohibit the jury from considering the evidence against Ms. Collier; it merely cautioned the jury that Ms. Collier was not the party on trial. We conclude that the appellant is not entitled to plain error relief.

## 2. Lesser-Included Offenses

The appellant complains that the trial court erred by failing to instruct the jury on various lesser-included offenses. Specifically, he contends that the trial court failed to

instruct the jury on attempted simple possession or casual exchange of cocaine; attempted simple possession or casual exchange of dihydrocodeinone; and attempted simple possession or casual exchange of marijuana. The State responds that the trial court did not err.

Initially, we note that the appellant failed to request that the trial court instruct the jury on any lesser-included offenses. Tennessee Code Annotated section 40-18-110(a) provides that "[w]hen requested by a party in writing prior to the trial judge's instructions to the jury in a criminal case, the trial judge shall instruct the jury as to the law of each offense specifically identified in the request that is a lesser included offense of the offense charged in the indictment or presentment." However, "when no written request is made by a party for an instruction on a lesser-included offense, as in this case, the trial court may charge the lesser-included offense, but a party is not entitled to such an instruction." Bryant v. State, 460 S.W.3d 513, 523 (Tenn. 2015) (citing State v. Fayne, 451 S.W.3d 362, 370-71 (Tenn. 2014)); see Tenn. Code Ann. § 40-18-110(b). Moreover, in the absence of a written request, the trial court's failure to instruct the jury on a lesser-included offense "'may not be presented as a ground for relief either in a motion for a new trial or on appeal.'" Fayne, 451 S.W.3d at 371 (quoting Tenn. Code Ann. § 40-18-110(c)); see also State v. Vasques, 221 S.W.3d 514, 523-24 (Tenn. 2007).

Our supreme court has cautioned that "[a]s a non-structural constitutional error, the omission of a lesser-included offense instruction is subject to waiver for purposes of plenary appellate review when the issue is not timely raised and properly preserved." State v. Page, 184 S.W.3d 223, 230 (Tenn. 2006). "The waiver of a lesser included offense instruction does not, however, preclude our consideration of the issue under the doctrine of plain error." Fayne, 451 S.W.3d at 230 (citing Page, 184 S.W.3d at 371).

In the instant case, the appellant not only failed to request lesser-included offense instructions in writing but also, when given the opportunity by the trial court, failed to object or request any other instructions. Id. Accordingly, we conclude that the appellant failed to properly preserve the issue and is entitled to relief only in the event of plain error. Id.; see Tenn. R. App. P. 36(b). To be entitled to plain error relief, the appellant has the burden of demonstrating that the error "more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b); State v. Rodriguez, 254 S.W.3d 361, 372 (Tenn. 2008).

Our supreme court has determined that an offense is a lesser-included offense if "all of its statutory elements are included within the statutory elements of the offense charged" or if the offense is "an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense." State v. Burns, 6 S.W.3d 453, 466-67

(Tenn. 1999).[2]  Generally, a lesser-included offense instruction is proper if "1) the record contains any evidence that reasonable minds could accept as to the existence of the lesser-included offense; and 2) the conviction for the lesser-included offense is supported by legally sufficient evidence."  Bryant, 460 S.W.3d at 523.

With regard to the indicted offense of possession of cocaine with the intent to sell or deliver, the trial court instructed the jury on the charged offense and numerous lesser-included offenses, including simple possession and casual exchange.  The trial court did not give any lesser-included offense instructions for the charged offenses of simple possession of dihydrocodeinone or marijuana.

This court has previously said that "casual exchange is not a lesser included offense of possession of cocaine with the intent to sell."  State v. Nelson, 275 S.W.3d 851, 865 (Tenn. Crim. App. 2008); see also State v. Marvin Harold Dorton, II, No. E2013-01580-CCA-R3-CD, 2014 WL 3893363, at *10-11 (Tenn. Crim. App. at Knoxville, Aug. 11, 2014).  Therefore, the trial court did not commit plain error by failing to charge attempted casual exchange.  However, simple possession is a lesser-included offense of possession with the intent to sell or deliver.  See State v. Timothy Wayne Grimes, No. M2001-01460-CCA-R3-CD, 2002 WL 31373472, at *6 (Tenn. Crim. App. at Nashville, Oct. 16, 2002).

When the court determines that an offense is a lesser-included offense, the court must then determine whether "the record contains any evidence which reasonable minds could accept as to the lesser included offense . . . view[ing] the evidence liberally in the light most favorable to the existence of the lesser included offense."  Tenn. Code Ann. § 40-18-110(a).  Then, the trial court "shall . . . determine whether the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser included offense."  Id.; see also Burns, 6 S.W.3d at 469.  "Inversely, when this test is not satisfied, no lesser-included offense instruction is required."  Bryant, 460 S.W.3d at 523-24.

The State's theory at trial was that the appellant possessed the drugs.  As defense counsel testified at the post-conviction hearing, the defense's theory was that the drugs belonged to Ms. Collier.  Blye, No. E2012-02626-CCA-R3-PC, 2013 WL 3973468, at *5.  Based on this "all or nothing" approach, we cannot say that a clear and unequivocal rule was breached by the failure to instruct the jury on attempted simple possession of cocaine,

_____

[2]Tennessee Code Annotated section 40-18-110 was amended in 2009 to provide a statutory definition of the term lesser-included offense; however, that statute is inapplicable here because the offenses occurred before the effective date of the amendment.  See Christopher M. Mimms v. State, No. M2014-01616-CCA-R3-PC, 2015 WL 3952161, at *6 n.2 (Tenn. Crim. App. at Nashville, June 29, 2015).

attempted simple possession of dihydrocodeinone, or attempted simple possession of marijuana. See Bryant, 460 S.W.3d at 525-26. Moreover, the record reflects that defense counsel made a strategic choice not to pursue the lesser-included offense of simple possession because it would conflict with the theory that Ms. Collier possessed the drugs and because it would not be believable when the amount of drugs present was considered. Id. at 526. Therefore, the instructions were waived for tactical reasons. Further, given the strength of the State's proof against the appellant, we cannot say that the failure to give the instructions probably changed the outcome of the trial. See State v. Hatcher, 310 S.W.3d 788, 814 (Tenn. 2010). After considering all the Adkisson factors, we conclude that the court did not commit plain error by failing to instruct on attempted simple possession.

### 3. Mens Rea

The appellant contends that the trial court erred by instructing the jury that the lesser-included offenses of simple possession and casual exchange of cocaine could be committed if he acted recklessly. Similarly, he contends that the trial court erred by instructing the jury that it could find him guilty of simple possession of dihydrocodeinone and simple possession of marijuana by finding that he acted recklessly. The State argues that any error was harmless.

As stated earlier, the appellant did not object to the jury instructions at trial; however, he raised the mens rea issue in his motion for new trial. Our supreme court has held that "[a]n erroneous or inaccurate jury charge, as opposed to an incomplete jury charge, may be raised for the first time in a motion for a new trial and is not waived by the failure to make a contemporaneous objection." State v. Faulkner, 154 S.W.3d 48, 58 (Tenn. 2005); see also Tenn. R. Crim. P. 30(b) (providing that "[c]ounsel's failure to object does not prejudice the right of a party to assign the basis of the objection as error in a motion for new trial").

It is an offense for a person knowingly to possess a controlled substance with the intent to sell or deliver. See Tenn. Code Ann. § 39-17-417(a)(4). Likewise, it is generally an offense for a person knowingly to possess or casually exchange a controlled substance. See Tenn. Code Ann. § 39-17-418(a). When instructing the jury on simple possession as a lesser-included offense of possession of 26 grams or more of cocaine with the intent to sell or deliver, the trial court stated:

> For you to find the [appellant] guilty of simple possession of cocaine the State must have proven beyond a reasonable doubt

the existence of the following essential elements:

> 1) That the [appellant] either intentionally, knowingly, or *recklessly* possessed a controlled substance, and;

> 2) That the substance was cocaine, a controlled substance. Cocaine is a Schedule II controlled substance.

(Emphasis added). When charging the jury on simple possession of dihydrocodinone and simple possession of marijuana, the court again stated that the offense was accomplished if the appellant "intentionally, knowingly, or *recklessly* possessed [the] controlled substance." (Emphasis added).

Our supreme court has recently stated that the "mental state, or 'mens rea,' is a material element of" a charged offense. Clark, 452 S.W.3d at 295. This court has previously explained that "[w]hen acting recklessly establishes an element, that element is also established if the defendant acted knowingly. Conversely, when acting knowingly establishes an element, that element is *not* established if the defendant acted only recklessly." State v. Gilliam, 901 S.W.2d 385, 390 (Tenn. Crim. App. 1995) (citations omitted); see Tenn. Code Ann. § 39-11-301(a)(2).

We conclude that the trial court erred by including the lesser-culpable mental state of recklessly for offenses that specifically required a mental state of knowingly. Our supreme court has held that "the failure to properly instruct the jury on a material element of an offense is a non-structural constitutional error. When such an error occurs, the conviction must be reversed unless the State can prove beyond a reasonable doubt that the error was harmless." Clark, 452 S.W.3d at 295; see also Tenn. R. App. P. 36(b).

The appellant acknowledges that the trial court correctly instructed the jury on the mental state required for possession of 26 grams or more of cocaine with the intent to sell. Nevertheless, he argues that he is entitled to a new trial because the trial court's erroneous instruction that simple possession of cocaine could be accomplished if the person acted recklessly caused the jury to infer that possession of 26 grams or more of cocaine with the intent to sell could also be accomplished if the person acted recklessly. We disagree. Our

supreme court has explained that "[j]urors are presumed to follow the instructions of the court." State v. Robinson, 146 S.W.3d 469, 494 (Tenn. 2004) (citing State v. Reid, 91 S.W.3d 247, 279 (Tenn. 2002)). Because the trial court did not err by instructing the jury regarding the conviction offense, we cannot say that the error in the lesser-included offense instruction probably changed the outcome of the trial. Accordingly, the appellant is not entitled to relief.

Next, the appellant contends that he is entitled to a new trial because the trial court incorrectly instructed the jury that the offenses of possession of dihydrocodeinone and possession of marijuana could be committed recklessly when the statutory mens rea for the crimes was that he acted knowingly. The State argues that the error was harmless because the "evidence overwhelmingly established that the [appellant's] possession of these substances was at a minimum knowing and not reckless." We disagree. We conclude that because the incorrect jury instruction regarding the appropriate mental state for the crimes of simple possession of dihydrocodeinone and simple possession of marijuana lessened the State's burden of proof, the error was not harmless. Accordingly, we conclude that a new trial on those charges is warranted.

C. Value of Drugs

Finally, the appellant contends that the trial court erred by allowing Detective Chambers to testify about the street value of the cocaine, maintaining that it was expert testimony and was not supported by the proper foundation. The State responds that the appellant waived the error by failing to object to the testimony. In the alternative, the State contends that the proper foundation was established and that the trial court did not err by allowing Detective Chambers to testify regarding the value of the cocaine.

As the State noted, the appellant failed to object to the testimony at trial. Moreover, defense counsel told the trial court, "I don't really have an objection as to [Detective Chambers] saying how much the drugs are worth. I mean, that'd be like saying a car salesman doesn't know how much cars are worth." Accordingly, the appellant has waived the issue. See Tenn. R. App. P. 36(a). Moreover, we discern no plain error. See Tenn. R. App. P. 36(b).

-16-

### III. Conclusion

In sum, we conclude that the trial court did not err by curtailing defense counsel's questioning of Ms. Collier, by giving a limiting instructing about how to consider the evidence regarding Ms. Collier, and by not instructing the jury on various lesser-included offenses. We also conclude that the appellant waived any issue concerning Detective Chambers's testimony regarding the value of drugs. We conclude, however, that the trial court erred by instructing the jury that the lesser-included offense of simple possession of cocaine and the charged offenses of dihydrocodeinone and marijuana could be committed with a mens rea of recklessly. Because the jury was correctly instructed on count one regarding the convicted offense of possession of 26 grams or more of cocaine with the intent to sell or deliver, the failure to instruct properly on the lesser-included offense was harmless. The error was not harmless, though, as to count two, possession of dihydrocodeinone, and count three, possession of marijuana. Accordingly, those convictions are reversed, and the case is remanded for a new trial.

_____

NORMA McGEE OGLE, JUDGE