IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 27, 2019

## STATE OF TENNESSEE v. HENRY NICHOLAS BROWN

**Appeal from the Criminal Court for Roane County**
**No. 2017-CR-377    Jeffery Hill Wicks, Judge**

———————————————————

### No. E2018-02135-CCA-R3-CD

———————————————————

The Defendant-Appellant, Henry Nicholas Brown, entered a guilty plea in the Roane County Criminal Court to aggravated assault (count one), evading arrest (count two), and reckless endangerment (count three), with the trial court to determine the length and manner of service of his sentence.[1]  Following a sentencing hearing, the trial court sentenced the Defendant to six, four, and two years, respectively.  The trial court ordered these sentences to be served consecutively, for an effective sentence of twelve years in the Tennessee Department of Correction.  In this appeal as of right, the Defendant contends that the trial court erred in imposing consecutive sentences.  Upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which TIMOTHY L. EASTER, and J. ROSS DYER, JJ., joined.

Mart S. Cizek, Assistant Public Defender, for the Defendant-Appellant, Henry Nicholas Brown.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Russell Johnson, District Attorney General; and Robert C. Edwards, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

---

[1] The Defendant also entered a guilty plea to driving on a suspended, cancelled, or revoked license, for which he received a concurrent sentence of six months.  In addition, during the same court setting, the Defendant entered guilty pleas to another set of similar cases from 2014 involving misdemeanor assault, resisting arrest, and evading arrest.  None of these cases are challenged in this appeal.

This case stems from a traffic stop of the Defendant, during which the Defendant abruptly pulled off in his vehicle and seriously injured a law enforcement officer in the process. On July 24, 2018, the Defendant entered a guilty plea and stipulated to the following factual basis:

[C]ount one, is that [the Defendant], on or about [August 6, 2017], in Roane County, Tennessee, did unlawfully and intentionally or knowingly cause an assault to Sergeant Jerry Singleton, of the Kingston Police Department, by use or display of a deadly weapon; that weapon was a motor vehicle . . . .

[C]ount two, is that [the Defendant], on or about [August 6, 2017], in Roane County, Tennessee, did unlawfully, while operating a motor vehicle on any street, road, alley, or highway, in the State of Tennessee, did intentionally flee, or attempt to [e]lude a law enforcement officer, Sergeant Jerry Singleton, of the Kingston Police Department, after having received any signal from the Officer to bring the vehicle to a stop. And the flight did create a risk of death, or injury, to innocent by-standers, per[su]ing law enforcement officer and other third parties . . . .

[C]ount three, the stipulation is that [the Defendant], on or about [August 6, 2017], in Roane County, Tennessee, did unlawfully, and recklessly, engage in conduct that placed another person, that person was Anthony Moore, Jr., in imminent danger of death, or serious bodily injury, and that conduct was committed with a deadly weapon; this deadly weapon was a motor vehicle . . . .

At the November 1, 2018 sentencing hearing, Margaret Gore, a Probation and Parole Officer with the Tennessee Department of Correction, testified that she prepared a presentence investigative report pertaining to the Defendant. She identified the report, which was admitted as an exhibit to the hearing without objection. She read the statement the Defendant provided to her into the record. The Defendant stated as follows:

I was towing a car to Midtown to sell it and on the way back it was dark and light. Singleton blue-lighted the truck behind me. Donald Goldberg was driving that truck. And the officer came up to the defendant's truck and I was already nervous and scared due to previous charges from 2013, and I knew I had warrants. So I saw his hand, the police officer, on his pistol and asked what seems to be the problem tonight, and I said, why did you pull me over. The officer asked for the license and registration. I

stomped the gas and the policeman may have been reaching in to turn off the ignition, I was scared and pill sick so I – so was not thinking clearly. At no time did I acknowledge or realize there was a tow dolly on the back of my vehicle. I guess the tow dolly struck him as I was pulling away. I did not know he was hurt.

Officer Gore also performed a "Strong-R" evaluation on the Defendant and concluded that he was high risk for violence if he was to be placed on community supervision. She agreed that the Defendant did not have any felony convictions in his criminal history; however, she noted several misdemeanor convictions. Officer Gore's report also reflected that the Defendant had been cited in the Roane County jail for two disciplinary actions in December 2017 for verbal disrespect and in August 2018 for contraband in the form of "tattooing." Finally, she testified that the Defendant was on county probation at the time of these offenses, had absconded from probation, and had outstanding warrants for his arrest at the time of these offenses.

Officer Jerry Singleton of the Kingston Police Department testified that on the date of the offense, he was responding to several calls about a possibly impaired driver with lights out on an attached towing dolly. Officer Singleton observed a vehicle matching the given description, initiated his blue lights, and pulled the Defendant over attempting to effectuate a traffic stop. As Officer Singleton approached the Defendant's vehicle, he asked for the Defendant's license and registration, and the Defendant replied he did not have them. At the same time, the Defendant put his vehicle in gear and took off. Officer Singleton said that the Defendant's vehicle "kind of ran over [him]" and his "world went upside down." Officer Singleton noted that the Defendant's vehicle, a Dodge Dakota pick-up truck, had an average size towing dolly attached to the rear. He said the dolly "caught [his] left leg, breaking [his] tibia and leaving [him] laying in the middle of the" highway. Although it was after dark, Officer Singleton was certain that he was visible to the Defendant when he pulled off. A video of the traffic stop showing how the Defendant's truck struck Officer Singleton was admitted into evidence as an exhibit without objection.

As a result of his injuries, Officer Singleton spent two days in the hospital, attended physical therapy for three months, and received personal counseling. He incurred medical bills in excess of $28,000, most of which was covered by worker's compensation. He had accelerated arthritis and, based on medical advice, anticipated knee surgery in eight to nine years. He was unable to work as a police officer for six months and was forced to resign from his part-time job as a bus driver. He testified that the incident greatly impacted his personal life and hindered several of his outside activities. He confirmed that he provided a victim impact statement to the probation and parole officer in this case.

Officer Singleton's wife, Jennifer Singleton, also testified regarding how this incident impacted their family. Significantly, the day the Defendant ran over her husband's leg was their first wedding anniversary. She observed that her husband had "work[ed] extremely hard to make his way back but just to 96 percent. He will never be a hundred percent. He will always have pain, he will always have issues . . . . He still walks with a limp which is going to cause him to blow out his other leg eventually."

The State offered into evidence certified copies of the Defendant's convictions that were reflected in the presentence report without objection. The record shows that the Defendant had a criminal history consisting of the following: seven convictions of driving on a suspended, cancelled, or revoked license; four convictions of evading arrest; two convictions of failure to stop at the scene of an accident; resisting arrest; assault; criminal impersonation; reckless driving; reckless endangerment; use of false identification; unauthorized use of a vehicle or joyriding; and several violations of probation.

Garry Kerley, a retired officer of the Kingston Police Department, testified as to his experience attempting to serve outstanding warrants on the Defendant sometime in 2013. Upon seeing Officer Kerley in a marked patrol car, the Defendant, as a passenger in a vehicle, exited the vehicle and jumped onto a bridge. Officer Kerley pursued the Defendant, as he ran away from him on foot. Officer Kerley said the Defendant eventually jumped into a river and swam across it trying to get away. In apprehending the Defendant, another officer was forced to use his taser to take him into custody. On another occasion, the Defendant was at a friend's home late at night. When Officer Kerley told the Defendant of the outstanding warrant for his arrest, the Defendant became verbally abusive. Officer Kerley was forced to pepper spray him. On yet another occasion when he attempted to serve a warrant, the Defendant engaged in "a little bit of a scuffle" with Officer Kerley before complying with his commands.

The Defendant testified and apologized to Officer Singleton and his family. He admitted that he was attempting to evade arrest that night; however, he said he did not intend to hurt Officer Singleton. He admitted to his prior convictions as listed in the presentence report and emphasized that they were all misdemeanors. Prior to this offense, he was working in the oil fields of North Dakota. He explained that his mother passed away in 2015, and his father passed away in 2016. He said he stayed with his sister in North Dakota, his only remaining family. Apparently, upon returning to Tennessee, the Defendant "got on the pain medication and stuff and just – I – when I lost my parents I just kind of give up." The Defendant was diagnosed with ADHD as a child. On cross-examination, the State confirmed the Defendant's criminal history and

emphasized the convictions that involved the Defendant fleeing from the police and the harm it caused the community.

Following argument of counsel, the trial court issued an oral ruling and sentenced the Defendant, as a Range I standard offender, to six years for the aggravated assault, a Class C felony, four years for the evading arrest, a Class D felony, and two years for the reckless endangerment, a Class E felony. The trial court ordered these sentences to be served consecutively based on the Defendant's extensive criminal history and the fact that the Defendant was on probation at the time he committed the instant offenses. The Defendant filed a timely notice of appeal and is now properly before this court for review.

## ANALYSIS

Although the Defendant challenges the propriety of consecutive sentencing, he does not appear to challenge any specific aspect of the trial court's consecutive sentencing order. Instead, the Defendant relies on general sentencing principles and claims that his sentence was "greater than that deserved for the offense committed," not "justly deserved in relation to the offense," and not "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. §§ 40-35-102(1) and -103(2), (4); see also State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002). In support of this claim, the Defendant points out that while his actions constitute three separate criminal convictions, they arose from a single criminal episode. "Based on the singularity of his actions," the Defendant argues that the trial court erred in consecutive sentencing. In response, the State contends, and we agree, that the trial court properly imposed consecutive sentencing.

An abuse of discretion with a presumption of reasonableness standard of review applies to a trial courts' decisions regarding consecutive sentencing. State v. Pollard, 432 S.W.3d 851, 859 (Tenn. 2013). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." Id. at 862 (citing Tenn. R. Crim. P. 32(c)(1); State v. Bise, 380 S.W.3d 682, 705 (Tenn. 2012)). This court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." Pollard, 432 S.W.3d at 861. As relevant here, a trial court may order sentences to run consecutively pursuant Tennessee Code Annotated section 40-35-115 if the court finds by a preponderance of the evidence that "[t]he defendant is an offender whose record of criminal activity is extensive" or "the defendant is sentenced for an offense committed while on probation." Tenn. Code Ann. §§ 40-35-

115(b)(2), (6). "[A]n extensive criminal history, standing alone, is enough to justify the imposition of consecutive sentencing." State v. Nelson, 275 S.W.3d 851, 870 (Tenn. Crim. App. 2008) (citing State v. Adams, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997)).

Upon our review, we conclude that the trial court properly imposed consecutive sentencing in this case. At the hearing, the probation officer testified as to the Defendant's extensive criminal history. The State also introduced certified copies of the Defendant's multiple convictions, with supporting arrest warrants, and probation violations. Although the Defendant's criminal history consisted primarily of misdemeanors, the Defendant had a pattern of evading arrest from law enforcement officers, confronting law enforcement, and causing potential harm to them and the public. After several encounters with law enforcement, the Defendant was stopped by Officer Singleton, evaded arrest, and seriously injured Officer Singleton in the process. The Defendant was also on probation at the time he committed the instant offenses. Either of these grounds, the Defendant's extensive criminal history or his probationary status at the time of the offense, support the trial court's imposition of consecutive sentencing. See Nelson, 275 S.W.3d at 870. Although the Defendant argues that consecutive sentencing was improper because his convictions arose from the same criminal episode, we disagree. See Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976) ("reject[ing] petitioner's argument that in determining whether to sentence a defendant to consecutive sentences, the trial judge is required to take into consideration the fact that all of the offenses arose out of one single criminal episode"); State v. Palmer, 10 S.W.3d 638 (Tenn. Crim. App. 1999). Accordingly, the trial court did not abuse its discretion in ordering the Defendant to serve his sentences in this case consecutively. The Defendant is not entitled to relief.

## CONCLUSION

Upon our review, we affirm the judgments of the trial court.

_____
CAMILLE R. MCMULLEN, JUDGE