IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 4, 2024

## STATE OF TENNESSEE v. JONATHAN E. WOODRUFF

**Appeal from the Circuit Court for Madison County**
**No. 20-640   Joseph T. Howell, Judge**

_____

**No. W2023-01446-CCA-R3-CD**

_____

The Defendant, Jonathan E. Woodruff, pled guilty to the offense of tampering with evidence. The trial court imposed a five-year sentence to be served in a community corrections program and later on probation. Thereafter, the Defendant was alleged to have engaged in new criminal conduct by possessing fentanyl, and following a hearing, the trial court fully revoked the Defendant's suspended sentence. In this appeal, the Defendant argues that a violation was not established by a preponderance of the evidence and that he was denied the opportunity to review a video of the alleged misconduct. Upon our review, we respectfully disagree and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and TIMOTHY L. EASTER, J., joined.

A. Russell Larson, Jackson, Tennessee, for the appellant, Jonathan E. Woodruff.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Lee R. Sparks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

In December 2020, the Defendant pled guilty to tampering with evidence. The trial court imposed a five-year sentence and ordered that the Defendant serve the sentence in a

community corrections program. On July 28, 2022, the court ordered that the Defendant be released from the community corrections program and placed on probation supervised by the Tennessee Department of Correction ("the Department"). *See* Tenn. Code Ann. § 40-36-106(e)(3)(A) (2019).

On July 21, 2023, the Defendant was arrested and charged with the felony offense of possession of fentanyl. The Department filed a probation violation report recommending revocation of the probationary sentence, and the trial court held a revocation hearing on September 11, 2023.

At the hearing, the only witness presented by either party was Special Agent Landon Oliver, who worked with the Drug Task Force for the Twenty-Sixth Judicial District. On June 29, 2023, Agent Oliver received a phone call from the manager of the Jackson Hotel in Jackson, Tennessee, alerting him to suspicious activity involving the Defendant. According to the manager, the Defendant was making trips back and forth to a particular vending machine at the hotel. The agent went to the vending machine and found 2.1 grams of fentanyl wrapped in a plastic bag placed behind the machine.

Agent Oliver testified that he recovered the fentanyl packet about thirty minutes after the Defendant placed it behind the vending machine. He also said that the Defendant returned about an hour later and looked behind the vending machine again. Agent Oliver believed that the Defendant was looking for the fentanyl that the agent had recovered.

The agent testified that he viewed security camera footage of the area. The State did not introduce this security video into evidence but admitted without objection still photographs taken from the video. Agent Oliver testified that in one of the photographs, the Defendant was carrying an item that was consistent with the fentanyl packet the agent found behind the vending machine. The agent also identified other photographs showing the Defendant behind the vending machine itself. The agent testified that his review of the video footage confirmed that the Defendant was the only person who went behind the vending machine.

Agent Oliver testified that he did not believe the Defendant was leaving the fentanyl for someone else but was merely placing the narcotics there. After the investigation, the agent obtained an arrest warrant for unlawful possession of fentanyl, and the Defendant was arrested about a month later on July 21, 2023. The Defendant's cell phone was later searched and revealed evidence of narcotics transactions after this incident.

Following the hearing, the trial court fully revoked the Defendant's suspended sentence and ordered that he serve the balance of the sentence in the Tennessee Department

of Correction. The court credited the testimony of Agent Oliver and found that the preponderance of the evidence established that the Defendant possessed fentanyl. The court also examined the Defendant's history on probation. It observed that the Defendant had violated the conditions of his suspended sentence at least once in this case and four other times in a companion misdemeanor case.[1] As such, the trial court found that the Defendant was "no longer a proper candidate for probation[.]"

The court entered its revocation order on September 11, 2023. The Defendant filed an untimely notice of appeal thirty-one days later on October 12, 2023.

## ANALYSIS

### A.  UNTIMELY NOTICE OF APPEAL

As an initial matter, the State notes that the Defendant's appeal is untimely and argues that the appeal should be dismissed. "It is no secret that under Tennessee Rule of Appellate Procedure 4(a), the notice of appeal must be filed within 30 days after the date of entry of the judgment appealed from." *State v. James*, No. E2021-00559-CCA-R3-CD, 2022 WL 633540, at *1 (Tenn. Crim. App. Mar. 4, 2022) (citation and internal quotation marks omitted), *no perm. app. filed*. In this case, the trial court's revocation order was entered on September 11, 2023, when it was filed with the court clerk. As such, the Defendant had thirty days, or until October 11, 2023, to file a notice of appeal. Tenn. R. App. P. 4(a). Thus, the Defendant's notice of appeal, which was filed on October 12, 2023, was untimely.

"An untimely notice of appeal can, and often does, result in a dismissal of the appeal." *State v. Manning*, No. E2022-01715-CCA-R3-CD, 2023 WL 7439203, at *3 (Tenn. Crim. App. Nov. 9, 2023), *perm. app. denied* (Tenn. May 16, 2024). That said, the Rules of Appellate Procedure provide that the requirement of a timely-filed notice of appeal "may be waived in the interest of justice." Tenn. R. App. P. 4(a). When considering whether a waiver on an untimely notice of appeal is appropriate, "this court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case." *State v. Rockwell*, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007). The appealing party "bears the responsibility to properly perfect his [or her] appeal or to demonstrate that the 'interests of

---

[1] Although the trial court also revoked the Defendant's suspended sentence in this companion misdemeanor case, it is not the subject of this appeal, and the Defendant raises no issue with respect to this other case. As such, we do not address this companion case further. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.").

justice' merit waiver of an untimely filed notice of appeal." *State v. Thomas*, No. W2022-00109-CCA-R3-CD, 2023 WL 328337, at *3 (Tenn. Crim. App. Jan. 20, 2023), *perm. app. denied* (Tenn. June 7, 2023); Tenn. R. App. P. 4(a).

In this case, the Defendant offers little explanation beyond neglect for the untimely filing, and the absence of a reasonable explanation for the delay generally weighs against waiving the timely-filing requirement. *See, e.g.*, *Ivory v. State*, No. W2015-00636-CCA-R3-PC, 2015 WL 6873474, at *3 (Tenn. Crim. App. Nov. 9, 2015), *no perm. app. filed*. However, it is also true that the delay is short—one day—and this factor weighs in favor of granting a waiver. *See Thomas v. State*, No. E2021-01338-CCA-R3-PC, 2022 WL 16631309, at *5 (Tenn. Crim. App. Nov. 2, 2022), *perm. app. denied* (Tenn. Feb. 28, 2023). In addition, the Defendant has recognized that his notice of appeal was untimely and has affirmatively requested a waiver. As such, this is not a case in which the Defendant has disregarded the issue, failed to request a waiver, or ignored arguments advanced by the State. *Cf. Manning*, 2023 WL 7439203, at *5. Under these circumstances, we exercise our discretion to address the Defendant's issues on their merits.

## B. OBJECTION TO ABSENCE OF VIDEO RECORDING

In his first issue, the Defendant argues that the trial court erred in allowing Agent Oliver to testify from still photographs taken from a video recording rather than referring to the recording itself. More specifically, the Defendant asserts that the trial court violated the "best evidence rule" by failing to require production of the video when it was available and was "potentially relevant and even exculpatory evidence." In response, the State argues that the Defendant has waived this issue on appeal by failing to object to this evidence during the revocation hearing. We agree with the State.

### 1. Waiver of Plenary Review

Ordinarily, before a party can challenge the admission of evidence on appeal, the party must have preserved the issue in the trial court. "To preserve an issue, the party should first assert a timely objection identifying a specific ground." *State v. Thompson*, No. W2022-01535-CCA-R3-CD, 2023 WL 4552193, at *3 (Tenn. Crim. App. July 14, 2023), *no perm. app. filed*. A party's "specific ground" for an objection is important because a party generally may not "assert a new or different theory to support the objection" in the appellate court. *State v. Howard*, No. M2020-01053-CCA-R3-CD, 2021 WL 5918320, at *6 (Tenn. Crim. App. Dec. 15, 2021), *no perm. app. filed*; *cf. also State v. Vance*, 596 S.W.3d 229, 253 (Tenn. 2020) ("[A] party is bound by the ground asserted when making an objection to the admission of evidence and cannot assert a new or different theory to support the objection in the motion for new trial.").

4

Although the Defendant now asserts that admission of the still photographs violated the best evidence rule, he did not raise this objection during the revocation hearing. In fact, he did not object to any evidence during that hearing, save for a single hearsay objection as to why the hotel manager thought the Defendant was behaving suspiciously.

We "will not fault a trial court for failing to rule on an unexpressed objection even if, in hindsight, the objection appears appropriate." *Vance*, 596 S.W.3d at 253. Because the Defendant did not raise an objection in the trial court based on the best evidence rule or Tennessee Rule of Evidence 1002, we conclude that the Defendant has waived plenary review of these issues on appeal. *State v. Dotson*, 450 S.W.3d 1, 95 (Tenn. 2014).

## 2. Plain Error Review

Despite the Defendant's failing to preserve his issues related to Agent Oliver's use of still photographs, this court retains the discretion to consider "an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b); *see also Bristol*, 654 S.W.3d at 927. However, we decline to do so for two reasons.

First, the Defendant does not request that we conduct a plain error review, and we generally refrain from addressing issues not raised by the parties. *See State v. Nelson*, 275 S.W.3d 851, 864 (Tenn. Crim. App. 2008) ("Appellate courts are advised to use plain error sparingly in recognizing errors that have not been raised by the parties or have been waived due to a procedural default."). Because the "[d]efendant bears the burden of persuasion to show that he is entitled to plain error relief," *State v. Dixon*, No. M2021-01326-CCA-R3-CD, 2022 WL 5239289, at *21 (Tenn. Crim. App. Oct. 6, 2022), *perm. app. denied* (Tenn. Feb. 8, 2023), a defendant's failure to request this relief weighs against any such consideration on our own. *See State v. Cornwell*, No. E2011-00248-CCA-R3-CD, 2012 WL 5304149, at *18 (Tenn. Crim. App. Oct. 25, 2012) (declining to conduct a plain error review of an expert testimony issue because the defendant 'does not request plain error review of this issue, and we do not discern a basis for such under the facts of this case'), *perm. app. denied* (Tenn. Mar. 5, 2013).

Second, and more importantly, the State specifically argued in its response brief that the Defendant waived these issues by failing to raise them in the trial court. Despite being on notice that his issues may be waived, the Defendant did not request plain error review in his reply brief or argue the factors necessary for such relief to be granted. *But see State v. Long*, No. W2016-02471-CCA-R3-CD, 2018 WL 3203124, at *13 (Tenn. Crim. App. June 29, 2018) (affirming admission of still photographs taken from a video over a best-evidence objection as being a proper duplicate where the defendant did not challenge the

authenticity of the original video recording or the authenticity of the photographs), *perm. app. denied* (Tenn. Sept. 17, 2018). "Where a defendant fails to respond to a waiver argument, only particularly compelling or egregious circumstances could typically justify our sua sponte consideration of plain error relief." *Thompson*, 2023 WL 4552193, at *5. Because no such circumstances exist here, we respectfully decline to analyze the Defendant's issues further for plain error. The Defendant is not entitled to relief on this ground.

## C.    REVOCATION OF DEFENDANT'S SUSPENDED SENTENCE

The Defendant next argues that the record does not support the trial court's finding that he violated the terms and conditions of his probation. More specifically, the Defendant asserts that a preponderance of the evidence does not show that he ever "possessed, handled or knew" of the fentanyl discovered by Agent Oliver. In response, the State contends that the trial court properly determined that the evidence supported a revocation of probation. We agree with the State.

### 1.    Standard of Appellate Review

We review a trial court's decision to revoke a defendant's probation for an "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). However, if the trial court does not make such findings, then this court "may conduct a de novo review if the record is sufficiently developed for the court to do so, or [we] may remand the case to the trial court to make such findings." *Id.* In this case, because the trial court placed sufficient findings on the record to support its decisions regarding the violation and consequence determinations, we review those decisions for an abuse of discretion.

### 2.    Revocation of Probation

When a trial court imposes a sentence for criminal conduct, the court may suspend the sentence for an eligible defendant and place that defendant on probation. *See* Tenn. Code Ann. §§ 40-35-103; 40-35-303(b). The trial court may also "require that the defendant comply with various conditions of probation where those conditions are suitable to facilitate rehabilitation or to protect the safety of the community and individuals in it." *State v. Robinson*, No. M2022-00248-CCA-R3-CD, 2022 WL 17335656, at *3 (Tenn. Crim. App. Nov. 30, 2022), *perm. app. denied* (Tenn. Feb. 8, 2023).

6

As long as a defendant complies with the conditions of the suspended sentence, the defendant will remain on probation until the sentence expires. *See State v. Taylor*, 992 S.W.2d 941, 944-45 (Tenn. 1999). However, if a defendant violates a probation condition, then the trial court may address the violation as it "may deem right and proper under the evidence," subject to various statutory restrictions. Tenn. Code Ann. § 40-35-311(d)(1) (Supp. 2021). As such, the nature of a probation revocation proceeding involves a two-step process with "two distinct discretionary decisions." *Dagnan*, 641 S.W.3d at 757. The first step "is to determine whether to revoke probation, and the second is to determine the appropriate consequence upon revocation." *Id.*

### a. The Violation Determination

As to the first step, a trial court cannot find a violation of the conditions of probation unless the record supports that finding by a preponderance of the evidence. *See* Tenn. Code Ann. § 40-35-311(d)(1); *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005). When the trial court ordered that the Defendant be released from the community corrections program and placed on probation supervised by the Department, it entered an order establishing the conditions of this probation. The first condition to which the Defendant agreed was that he would "obey the laws of the United States, or any State in which [he] may be, as well as any municipal ordinances." This court has also recognized that "compliance with our state laws is an automatic condition of a suspended sentence, and when a trial court learns that a defendant has violated the law, it has the power to initiate revocation proceedings." *State v. Stubblefield*, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997).

In the context of felony probation, "[t]he probation statute provides for two categories of probation violations, technical and non-technical, with differing penalties for both." *State v. Walden*, No. M2022-00255-CCA-R3-CD, 2022 WL 17730431, at *3 (Tenn. Crim. App. Dec. 16, 2022) (citing Tenn. Code Ann. § 40-35-311(e)(2) (Supp. 2021)), *no perm. app. filed*. In felony probation cases, a trial court's authority to revoke probation fully for criminal conduct is generally limited to non-technical violations, or those consisting of new felonies or Class A misdemeanor offenses. *Id.*; Tenn. Code Ann. § 40-35-311(g) (Supp. 2022).

In this case, the State alleged that the Defendant violated his probation by unlawfully possessing fentanyl. If proven, the offense of unlawfully possessing fentanyl would constitute at least a Class A misdemeanor offense. Tenn. Code Ann. § 39-17-418(a). It could also constitute a felony offense depending on whether the Defendant also had the intent to manufacture, deliver, or sell the controlled substance. *See id.* § 39-17-417(a), (c).

The trial court credited the testimony of Agent Oliver, who reported receiving a phone call from the manager at the Jackson Hotel. After he arrived at the hotel, the agent recovered 2.1 grams of fentanyl concealed behind a vending machine. The agent's subsequent review of the hotel's surveillance video revealed that the Defendant appeared to place a small white object behind the same vending machine some thirty minutes before the recovery. About an hour later, the Defendant returned to the same vending machine and appeared to look for an item or object behind the machine. According to the agent's credited testimony, no other person was seen accessing the area behind the vending machines during this time. Finally, a search of the Defendant's cell phone revealed evidence of narcotics transactions occurring after this seizure.

To find an abuse of discretion in the violation determination, a defendant must establish that "the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991); *State v. Stack*, 682 S.W.3d 866, 871 (Tenn. Crim. App. 2023) ("An abuse of discretion has been established when the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." (citation and internal quotation marks omitted)). The evidence here supports the trial court's conclusion that the Defendant engaged in new criminal conduct. As such, we conclude that the trial court acted within its discretion in finding that Defendant committed a non-technical violation of probation.

### b.      The Consequence Determination

As to the second step, "the consequence determination essentially examines whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation." *State v. Robinson*, No. M2022-00248-CCA-R3-CD, 2022 WL 17335656, at *4 (Tenn. Crim. App. Nov. 30, 2022), *perm. app. denied* (Tenn. Feb. 8, 2023). In this case, the Defendant does not contest the full revocation of his sentence apart from his assertion that he was never in possession of fentanyl. As such, we affirm the trial court's decision to fully revoke the Defendant's suspended sentence as a consequence of his new criminal conduct. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.").

### CONCLUSION

In summary, we hold that the record supports the trial court's finding that the Defendant violated the conditions of his suspended sentence by engaging in new criminal conduct. We also hold that the trial court acted within its discretion to fully revoke the

Defendant's suspended sentence as a consequence of that violation. Accordingly, we respectfully affirm the judgment of the trial court.

_____
TOM GREENHOLTZ, JUDGE