IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 10, 2024 Session

## RICO EUGENE MALLARD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
No. 97-C-1694      Steve R. Dozier, Judge
_____

### No. M2024-00265-CCA-R3-PC
_____

Petitioner, Rico Eugene Mallard, appeals the summary dismissal of his petition seeking post-conviction relief from his 1999 especially aggravated robbery conviction, for which he was sentenced to twenty-two years' incarceration to be served consecutively to his life sentence for first degree murder. The post-conviction court found that *State v. Booker,* 656 S.W.3d 49 (Tenn. 2022), did not establish a new constitutional right applicable to Petitioner's case, and therefore, the statute of limitations was not tolled, and the petition was time-barred. Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JOHN W. CAMPBELL, SR., JJ., joined.

C. Dawn Deaner (on appeal); and Chase Cunningham, Angela L. Bergman, and Emily Fountain (at post-conviction hearing), Nashville, Tennessee, for the appellant, Rico Eugene Mallard.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Glenn R. Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

There was no direct appeal from Petitioner's convictions,[1] and we obtain the following factual summary from this court's opinion in Petitioner's Error Coram Nobis

_____

[1] Petitioner claims in his brief that he was "basically abandoned" by trial counsel after trial. There was no motion for a new trial, no motion to withdraw and appoint substitute counsel, no direct appeal, and no other substantive post-conviction review of his convictions or his sentence filed.

appeal. *State v. Mallard*, No. M2017-01424-CCA-R3-ECN, 2018 WL 5778972, at \*1 (Tenn. Crim. App. Nov. 2, 2018).

In January 1997, Larry Huber died after being shot multiple times. Mr. Huber's vehicle was also stolen. Petitioner, who was seventeen years old, and co-defendant Terrance McLaurine, who was twelve years old, were arrested and charged with the offenses.[2] Following his transfer from Davidson County Juvenile Court, Petitioner was indicted by the Davidson County Grand Jury with one count each of first degree premeditated murder, first degree felony murder, and especially aggravated robbery. On June 29, 1999, a jury convicted Petitioner of all charged offenses. The trial court imposed an automatic life sentence on each of the murder convictions and merged the first degree premeditated murder conviction with the felony murder conviction. Following a sentencing hearing, the trial court sentenced Petitioner as a violent offender to a term of twenty-two years at 100% service for especially aggravated robbery and ordered that the sentence be served consecutively to his life sentence.[3] *Id.*

On November 18, 2022, the Tennessee Supreme Court issued *Booker*, a plurality opinion holding "that an automatic life sentence when imposed on a juvenile homicide offender with no consideration of the juvenile's age or other circumstances violates the prohibition against cruel and unusual punishment under the Eighth Amendment to the United States Constitution." *Booker*, 656 S.W.3d at 52. The court specifically limited the application of its ruling "to juvenile homicide offenders." *Id*. at 53. The court reasoned that "in juvenile first-degree murder cases, *and only in these cases*, a sentence is automatically imposed without considering age, the nature of the crime, or any other factors." *Id*. at 63 (emphasis added). The *Booker* court fashioned the following remedy for cases where a juvenile homicide offender was automatically sentenced to life:

> In remedying this constitutional violation, we exercise judicial restraint. We need not create a new sentencing scheme or resentence Mr. Booker—his life sentence stands. Rather, we follow the policy embodied in the federal Constitution as explained in *Montgomery v. Louisiana*, 577 U.S. 190, 136 S. Ct. 718, 193 L.Ed.2d 599 (2016) and grant Mr. Booker an individualized parole hearing where his age and other circumstances will be properly considered. The timing of his parole hearing is based on release eligibility in the unrepealed version of section 40-35-501(h)(1), previously in effect, that provides for a term of sixty years with release eligibility of sixty percent, but not less than twenty-five years of service. Thus, Mr. Booker remains

---

[2] According to the Petition, Mr. McLaurine pleaded guilty to second degree murder and was sentenced to fifteen years' incarceration.

[3] The judgment of conviction for especially aggravated robbery has a check mark for "Standard 30% Range 1" and for "Violent 100%."

sentenced to sixty years in prison, and after he has served between twenty-five and thirty-six years, he will receive an individualized parole hearing where his age and other circumstances will be considered. Our limited ruling, applying only to juvenile homicide offenders, promotes the State's interest in finality and efficient use of resources, protects Mr. Booker's Eighth Amendment rights, and is based on sentencing policy enacted by the General Assembly.

*Id*. at 53.

On November 17, 2023, Petitioner filed a Petition for Post-Conviction Relief ("the Petition"). Petitioner acknowledged that the Petition was filed "outside the initial limitations period" but argued that the Petition was timely because it was filed within one year of the final ruling in *Booker*, in which the supreme court established "a constitutional right that was not recognized as existing at the time" of Petitioner's trial. Petitioner asserted that *Booker* established a constitutional "right of a juvenile to be sentenced by a judge or jury that exercises discretion that takes into account the mitigating qualities of youth."

The post-conviction court found that *Booker* was silent as to consecutive sentencing and that "no new and applicable constitutional right [was] conferred upon Petitioner." The court found that the Petition was not timely filed and summarily dismissed the Petition.

**Analysis**

Petitioner claims that the post-conviction court erred by summarily dismissing the Petition as untimely. Petitioner acknowledges that, relative to his life sentence, he will receive a custodial parole hearing in 2030 in compliance with *Booker*'s holding on automatic life sentences for juvenile offenders convicted of first degree murder. However, Petitioner argues that the constitutional right recognized by *Booker* was "the right of a juvenile to be sentenced by a judge or jury that exercises discretion that takes into account the mitigating qualities of youth" and that this right was denied to him "when he was sentenced to effectively serve the remainder of his natural-born life in prison under a consecutive sentencing scheme that did not require or authorize the [trial c]ourt to consider the mitigating factors of youth now required under *Booker*." Because the Petition was filed within one year of the issuance of *Booker*, Petitioner argues that the Petition was timely filed.

The State argues that Petitioner "misconstrues" the holding in *Booker* and that the holding in *Booker* was limited to "an automatic life sentence when imposed on a juvenile homicide offender with no consideration of the juvenile's age or other circumstances[.]"

- 3 -

*Id.* at 52. The State claims that the post-conviction court properly dismissed the Petition as time-barred. We agree with the State.

A petition for post-conviction relief must be filed "within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of the petition shall be barred." Tenn. Code Ann. § 40-30-102(a). Subsection 102(b) provides that "[n]o court shall have jurisdiction to consider" a post-conviction petition "filed after the expiration of the limitations period unless" one of three listed exceptions is applicable. Tenn. Code Ann. § 40-30-102(b). The exception Petitioner claims is applicable to the Petition is codified in Subsection (b)(1), which allows tolling of a post-conviction claim that "is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial[.]" Tenn. Code Ann. § 40-30-102(b)(1).

Petitioner's sentences were not mandated by statute or rule to be aligned consecutively; therefore, the trial court had to decide how his sentences for multiple convictions would be aligned. *See* Tenn. Code Ann. § 40-35-115(d); Tenn. R. Crim. P. 32 (c)(3). The decision to impose concurrent or consecutive sentences is a matter entrusted to the sound discretion of the sentencing court. *State v. Hastings*, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999); *State v. Nelson*, 275 S.W.3d 851, 870 (Tenn. Crim. App. 2008).

Before the court could consider aligning Petitioner's sentences consecutively, the court had to find by a preponderance of the evidence that the proof at the sentencing hearing established at least one of the seven criteria listed in Tennessee Code Annotated section 40-35-115(b). *State v. Perry*, 656 S.W.3d 116, 127 (Tenn. 2022). At the time the offenses were committed and when Petitioner was sentenced, the criteria in the statute provided:

(1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b) (1997).

In comparing the automatic sentencing for first degree murder with the sentencing for Mr. Booker's other charge, the *Booker* court noted:

Although Mr. Booker had no sentencing hearing for the first-degree murder conviction, he did have a sentencing hearing on the especially aggravated robbery conviction. At that hearing, the trial court was allowed to consider as a mitigating factor whether Mr. Booker lacked substantial judgment in committing the offense because of his youth. Tenn. Code Ann. § 40-35-113(6). The trial court imposed on Mr. Booker not the harshest sentence, but a mid-range sentence of twenty years to be served concurrently with the life sentence for first-degree murder.

*Booker*, 656 S.W.3d at 64.

As in Mr. Booker's case, the trial court in Petitioner's case held a sentencing hearing and imposed a mid-range sentence, albeit twenty-two years as opposed to Mr. Booker's twenty-year sentence. Unlike Mr. Booker's sentence, Petitioner's sentences were aligned consecutively. Because consecutive sentencing was not mandated by statute or rule, the trial court in Petitioner's case had broad discretion to consider any mitigating factors, including whether a defendant "because of youth . . . lacked substantial judgment in committing the offense[,]" when imposing concurrent sentences for multiple convictions. Tenn. Code Ann. § 40-35-113(6). A trial court has the discretion to order sentences to be served concurrently even when the State proves one or more of the factors for consecutive

sentencing set out in Tennessee Code Annotated section 40-35-115(b). *Perry*, 656 S.W.3d at 125. There is no *automatic* consecutive sentencing under Tennessee Code Annotated section 40-35-115, and thus, the statute provides "the necessary procedural protection to guard against disproportionate sentencing." *Booker*, 656 S.W.3d at 63.

The record on appeal is very sparse. The record does not include the transcript of the trial, the transcript of the sentencing hearing, or the presentence report.[4] Tennessee Rule of Criminal Procedure 32(c)(1) requires a trial court to determine whether the sentences of a defendant convicted of multiple offenses will be served concurrently or consecutively and to "specify the reasons for this decision" in an order that "is reviewable on appeal." The record also does not contain an order arising from the sentencing hearing. "It is well-settled that the duty to prepare a record which 'conveys a fair, accurate, and complete account of what transpired with respect to those issues that are the bases of the appeal' rests on the appellant." *State v. Bobadilla*, 181 S.W.3d 641, 643 (Tenn. 2005); Tenn. R. App. P. 24(b). We understand that Petitioner's trial and sentencing hearing occurred approximately twenty-five years ago and that there was no direct appeal. Nevertheless, because Petitioner failed to include in the record before this court the transcript of the trial, the transcript of the sentencing hearing, the presentence report, or an order arising from the sentencing hearing, we are unable to determine what evidence the trial court considered or which of the seven factors set out in Tennessee Code Annotated section 40-35-115(b) (1997) the trial court found to justify aligning Petitioner's sentences consecutively.

As the court in *Booker* explained, in "juvenile first-degree murder cases, and only in these cases, a sentence is automatically imposed without considering age, the nature of the crime, or any other factors." *Booker*, 656 S.W.3d at 63 (emphasis added); *see also Mason v. State*, No. M2024-00287-CCA-R3-PC, 2024 WL 4615790, at *2 (Tenn. Crim. App. Oct. 30, 2024) (the *Booker* ruling applied only to juveniles convicted of first degree murder). Petitioner is correct that *Booker* conferred upon him a new constitutional right. However, that constitutional right was limited to his life sentence for first degree murder because that sentence was "automatically imposed without considering age, the nature of the crime, or any other factors." *Booker*, 656 S.W.3d at 63. We hold that the imposition of a consecutive sentence by a trial court who has the discretion to consider "age, the nature of the crime, or any other factors" provides "the necessary procedural protection to guard

---

[4] We take judicial notice of this court's records in Petitioner's error coram nobis proceeding. *Mallard*, 2018 WL 5778972, at *1. Attached as Exhibit 5, 6, and 7 to the petition for writ of error coram nobis are pages 15, 16, and 17 of a "Transcript of the Evidence Volume One of One Volume." The three pages of transcript are from the examination of "Bryan Knight" by "General Hass" and concerns the victim being pulled from his vehicle and being shot. The petition does not specifically state from what proceeding the transcript was obtained.

against disproportionate sentencing" and does not violate the prohibition against cruel and unusual punishment under the Eighth Amendment to the United States Constitution. *Id.*

We affirm the trial court's summary dismissal of the Petition as untimely.

_____
ROBERT L. HOLLOWAY, JR., JUDGE